[Civ. No. 13965.   First Dist., Div. Two.   Jan. 12, 1950.]

ANDREW PERRY MILLS et al., Respondents, v. GRACE
    SCHULBA, Individually and as Executrix., etc., Ap-
    pellants.

Millington, Dell'Ergo, Weeks & Morrissey for Appellants.

Bullock, Wagstaffe & Daba for Respondents.

GOODELL, J.—This appeal was taken from a judgment which decreed the reformation of a deed. The appellant Anthony Schulba died after the appeal was taken and his executrix was substituted.

Anthony and Grace Schulba owned two lots with a frontage of 73 feet, 5 inches, on Mission Street in Daly City. One, of irregular shape, with a frontage of 33 feet, 5 inches, has a two-story building thereon, the lower part of which is a shop and the upper part a dwelling. The other adjoins, with a frontage of 40 feet and a depth of about 100 feet, and was unimproved except for a fence, shed and garage.

In March, 1944, respondents, acting through a broker, made a written offer to buy both lots for $10,000. Appellants rejected the offer but said they would sell for $10,500, which meant $10,000 net.

In July, 1944, the parties got together without a broker and orally agreed on $10,000 net. The down payment was made, a deed recorded, a mortgage given, and respondents went into possession of both lots about August 22, 1944.

Some 19 months later it was discovered that the deed described only the improved property (the 33 ft., 5 in. lot)

and omitted all reference to the unimproved 40-foot lot. This suit was promptly brought.

The court found "that both parties understood that both parcels were to be included in the transaction and were covered by the deed, and that they were not both included because of a mutual mistake of the parties."

Appellants' four points are (1st) that the amended complaint does not state a cause of action; (2d) that the evidence is insufficient to support the findings and judgment; (3d) that plaintiffs' remedy, if any, is rescission, not reformation, and (4th) that plaintiffs are precluded from relief by their own negligence.

Appellants' attack on the amended complaint comes at a late date, for they did not demur. "In the absence of a demurrer, great liberality has been indulged in order to sustain faulty complaints in actions to reform contracts" (*Auerbach* v. *Healy*, 174 Cal. 60, 63 [161 P. 1157]) and our only inquiry is whether the pleading is sufficient as against a general demurrer.

In the amended complaint it is alleged that defendants, owners of both lots, agreed to sell them to plaintiffs for $10,000; that the parties jointly employed an attorney [naming him] for the purpose of preparing the necessary deed and mortgage and of securing title searches and title insurance; that on or about August 22, 1944, defendants delivered to plaintiffs a "joint tenancy deed, a copy of which is attached to the original complaint . . . as exhibit A, and is incorporated herein as though repeated and repleaded in full"; that such deed did not convey the two lots "and that the failure of said deed to convey the two said lots is the result of a mistake on the part of [the attorney] acting for and in behalf of all of the parties hereto and that it was the intention of the parties hereto that said deed should convey . . . title in fee simple in the two said lots . . . That both the plaintiffs and the defendants herein relied upon [the attorney] to so draw the deed as to convey title in fee simple . . ."

Our courts have repeatedly held that the mistake of a draftsman is a good ground for the reformation of an instrument which does not truly express the intention of the parties (22 Cal.Jur. 719 and cases cited; see, also, *Merkle* v. *Merkle*, 85 Cal.App. 87, 107-8 [258 P. 969]). The complaint not only alleges such mistake but goes further and alleges that the draftsman was "jointly employed," the theory being, appar-

ently, that *his* mistake was the mutual mistake of the principals who placed reliance in him.

The mistake of an attorney chosen by both sides to effect a transfer of title is not unlike that of a surveyor chosen by both sides to run a line, who runs it in the wrong place resulting in an erroneous description in the deed. Such a case was *Breen* v. *Donnelly,* 74 Cal. 301 [15 P. 845], (cited in *Hart* v. *Walton,* 9 Cal.App. 502, 508 [99 P. 719]) where reformation was decreed.

In 45 American Jurisprudence, pages 618-619 this is said: "A mutual mistake of their agents is not necessarily a mistake of the parties. Undoubtedly, it would be . . . where the mistake was made by a scrivener who acted as common agent of both parties in drafting the instrument; . . ." (See, also, 26 A.L.R. 506; *Meek* v. *Hurst* (1909), 223 Mo. 688 [122 S.W. 1022, 1024, 135 Am.St.Rep. 531] and *Kobylinski* v. *Szeliga,* 307 Mich. 306 [11 N.W.2d 899].)

The amended complaint did not contain the deed but referred to the copy thereof annexed to the original complaint and thus incorporated it. Appellants cannot complain of this since they not only did not demur, but in their answer they referred to the same exhibit attached to the superseded pleading. Thus there was an aider (21 Cal.Jur. 277), and both sides went to trial assuming that the deed was properly pleaded.

The amended complaint pleads a mutual mistake by alleging the error of the attorney "jointly employed," and its allegations bring the case within section 3399, Civil Code. This conclusion is supported by *Seegelken* v. *Corey,* 93 Cal. 92, 95 [28 P. 849] and *Robertson* v. *Melville,* 60 Cal.App. 354, 358-9 [212 P. 723], as well as by cases already cited.

Appellants' second point is that the evidence is insufficient to support the findings and judgment.

There are but few conflicts in this record.

It was established by documentary evidence that in the first negotiations an offer was made by respondents to purchase both lots for $10,000. Those negotiations broke down on the difference in price between $10,000 gross and $10,000 net. The final negotiations which were oral, informal, and without the aid of a broker, eventuated in an agreement on $10,000 net, precisely the figure for which appellants had originally held out. These undisputed facts and the coincidence of figures were persuasive evidence that the property on which the parties came to terms in July was identical with that as to which they had negotiated in March, namely, *both lots.*

After the attorney had agreed to represent respondents as well as appellants, Mills gave him, according to both respondents, the document containing the rejected offer, *which referred to both lots,* saying, ''This is the property I am buying.'' The attorney denied this, testifying that he never saw that document until the trial. Respondents testified that on the same occasion the attorney replied that the document did not contain ''a complete description of the property, which I will get from Mr. Schulba and have a title search on this property.'' It is undisputed that he obtained from Schulba an old deed but it described only the improved property. That description became the basis for the title search, the policy, the deed and the mortgage.

The following circumstances attending the transfer are persuasive evidence that both parties intended the unimproved lot to be included in the deed. (1) Possession of that lot was given to respondents in August, 1944, at the time the improved property was turned over, and remained unchallenged until March 18, 1946. (2) The key to the gate leading into it was handed by Schulba to the Mills' son with the statement ''It is not my key.'' (3) For almost two years appellants had rented the garage on the unimproved lot to the Campbells and in August after the transfer, when they tendered the rent to Schulba, he told them, according to their testimony, to pay it to Mills as the lot had been sold to him. They did so thereafter. Indeed Schulba admitted that he told Campbell ''From now on . . . pay the rent to Mr. Mills.'' (4) When Schulba removed his trucks and other property from the lot after the sale he left a power saw with Mills' permission, and later when he returned to get it he told Mills ''This is all, everything is yours now.'' (5) When tax time came around in 1945 after the sale, the tax bills for *both lots* were sent to appellants, and Schulba turned them over to Mills, saying according to Mills' testimony, ''This is your property now, you must pay the taxes on it,'' and respondents paid them.

Schulba testified that he intended to sell, and sold, only the improved property. The only explanation he gave for turning over the key to the gate was that Mills asked for it, and his explanation of respondents' possession of the vacant lot— which ran unchallenged for 19 months—was that he had no objection to respondents using the lot. He gave no satisfactory explanation for his direction to pay the garage rent to Mills. He denied giving respondents the 1945 tax bill for

the unimproved lot but added "May be if I did it was a mistake." At any rate such explanations as he did give respecting these inconsistent acts did not convince the trial court.

When the tax bills were sent out in the spring of 1946, the bill for the unimproved lot was mailed to appellants at their old address and respondents readdressed the envelope to appellants' new home in Redwood City. Thereafter the attorney in question ascertained at the assessor's office that record title to the vacant lot still stood in appellants' names. On March 18, 1946, acting then on behalf of appellants, he wrote respondents demanding possession of the lot or $40 monthly rental therefor. Respondents testified that this was the first notice they had that both lots had not been included in the deed. It is readily understandable that the trial court could have concluded that appellants made the same discovery only when they received the 1946 tax bill and the attorney checked the records.

In reformation cases the evidence must be clear and convincing "or something more than a preponderance" (*Moore* v. *Vandermast, Inc.*, 19 Cal.2d 94, 96-7 [119 P.2d 129]). It is not difficult to see why the trial court deemed the evidence sufficient to meet that strict test. The conflicts are but few, and the decision of the trial court upon them is conclusive upon this court (*Sullivan* v. *Moorhead*, 99 Cal. 157, 161 [33 P. 796]; see, also, *California Packing Corp.* v. *Larsen*, 187 Cal. 610, 613 [203 P. 102]).

Appellants' fourth contention is that plaintiffs are precluded from relief because of their negligence in failing to read the title papers with sufficient care and attention to discover the error.

Usually such claimed negligence is the failure to read some provision, condition, covenant or reservation contained in a writing. Here, however, the claimed negligence is Mills' failure to discover an error in a legal description of real property. In determining the question of fact whether or not the failure was excusable the trial judge presumably gave consideration to the peculiar nature of the words and figures which are supposed to have been read. The description is one by metes and bounds, of an irregularly shaped piece of land, and it takes up 22 lines of single-spaced typewriting. The difference is obvious between the act of reading such technical matter, with its language respecting lines and corners and its references to maps, and the books and pages of maps, on the one hand, and the act of reading a provision, condition, cove-

nant or reservation, on the other. Appellants argue that Mills should have caught the error in this description since the frontage is given therein as 33 feet, 5 inches, which is less than half the total frontage. They argue that he is an experienced businessman. He admitted his familiarity with business in so far as it concerns personal property, but disclaimed familiarity with real estate transactions or legal descriptions. Under cross-examination it developed that he had had only one such transaction before, and then everything was handled by a building and loan company. While Mills might be a businessman, he is neither a lawyer nor a surveyor, and it is an admitted fact that both parties relied on the attorney, who previously for about two years had been escrow officer of a title company, and presumably an expert. All these questions were for the trier of fact who presumably concluded that if Mills was careless in not detecting the error in description his inadvertence (as said in *Los Angeles etc. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 28 [87 P. 1029]) was ''of a character which will sometimes occur in the conduct of men of prudence and caution.'' In other words, to paraphrase *Burt* v. *Los Angeles etc. Assn.,* 175 Cal. 668, 675-6 [166 P. 993], the cause of his failure was satisfactorily explained to the court, which determined ''that the explanation or excuse of the failure relieves from the charge of the neglect of a legal duty within the meaning of section 1577 of the Civil Code.''

In the New Liverpool Salt case, *supra,* at page 27 the court says: ''It has been frequently decided that the mere failure of a party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent its reformation at the instance of the party who executes it thus carelessly.'' That case has been followed in *Travelli* v. *Bowman,* 150 Cal. 587, 591 [89 P. 347]; *California Packing Corp.* v. *Larsen,* 187 Cal. 610, 614, *supra,* and *Hanlon* v. *Western etc. Co.,* 46 Cal.App.2d 580, 597-8 [116 P.2d 465].

There is no basis for overturning the trial court's implied finding that respondents were not negligent, or, if they were, that such negligence was excusable.

█ Appellants' remaining contention (their third point) is that respondents' remedy, if any, is by rescission and not reformation. If respondents are entitled to reformation they would certainly be denied a complete equitable remedy if relegated to rescission. We are satisfied, as appears from the discussion of the three preceding points, that respondents

have pleaded and proved a case clearly entitling them to a reformation of the deed, hence there is no point in discussing the cases cited under the present head.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.