[Civ. No. 30906.    Second Dist., Div. Two.    Mar. 21, 1968.]

C. C. LISTER, Plaintiff and Respondent, v. BARTHOLD W. SORGE, Defendant and Appellant.

Sweeney, Cozy & Foye and Thomas P. Foye for Defendant and Appellant.

August J. Goebel for Plaintiff and Respondent.

KATZ, J. pro tem.*—This is an appeal from a judgment reforming a written option to purchase corporate stock and decreeing specific performance of the contract as reformed.

Plaintiff and defendant were among the original incorporators and stockholders of United Geophysical Corporation, a California corporation, (hereafter referred to as U.G.C.) and its Venezuelan subsidiary, United Geophysical Company S.A. (hereafter referred to as S.A.). In March 1958 defendant

*Assigned by the Chairman of the Judicial Council.

succeeded plaintiff as president of both corporations. At that time, in accordance with the terms of a stockholders' agreement, plaintiff sold 4,877 shares of his stock in each corporation to other stockholders, including 1,300 shares to defendant. Pursuant to the agreement, the shares were sold at a unit price of $39.36 for one share of each corporation. In August 1961, a dissident group of stockholders posed a challenge to the management group which was headed by defendant. Discussions were had between members of the management group and plaintiff, who still owned stock in both U.G.C. and S.A., respecting plaintiff's return to active participation in the affairs of the corporations. Negotiations culminated in the granting of stock options to plaintiff by five members of the management group, including defendant, and in defendant giving plaintiff a promissory note for $3,000. In return, plaintiff was to accept a place on the board of directors, vote for directors proposed by management, and perform certain additional services.

The stock option thus granted by defendant forms the basis for the present controversy. Plaintiff took the position that the option covered stock of U.G.C. and S.A. as a unit, while defendant took the position that it related solely to U.G.C. stock. The controversy centered around conflicting versions of the oral negotiations which preceded delivery of the executed written option agreement to plaintiff.

The written options and promissory note were prepared by Mr. Fox, an attorney employed by U.G.C., who had participated in some of the negotiations between the management group and plaintiff. On September 12, 1961, at a meeting attended by plaintiff and defendant, Fox delivered unsigned copies of the options and promissory note to plaintiff. At the stockholders meeting held the following day, a slate of directors proposed by the management group was elected. Plaintiff was included among those elected to the board of directors. On September 14, 1961, Fox mailed the executed option agreements and promissory note to plaintiff. The option signed by defendant read in part as follows: "Sorge . . . grants to Lister . . . an irrevocable option to purchase from Sorge up to 100 shares of UNITED GEOPHYSICAL CORPORATION stock owned by Sorge for the sum of $39.36 per share. . . ."

On May 1, 1962, S.A. was dissolved and later in the same month each stockholder thereof received $21.43 in cash and promissory notes in the amount of $53.02 for each share. Some

time before June 27, 1962, defendant told plaintiff he would not sell him shares of U.G.C. and S.A. as a unit for $39.36. On June 27, 1962, plaintiff gave Notice of Exercise of Options to the five members of the management group who had granted him options, including defendant, in which he demanded of defendant 100 shares of stock of U.G.C. and S.A. "as a unit for the unit price of $39.36 per share." Defendant refused to deliver 100 shares of both U.G.C. and S.A., but indicated willingness to deliver 100 shares of U.G.C. only. In June 1963, the board of directors of U.G.C. declared a stock dividend of six shares on each share effective July 15, 1963. On July 9, 1963, plaintiff deposited $3,936 in escrow and served a written notice upon defendant, along with a copy of the escrow instructions, demanding delivery of 100 shares of U.G.C. and 100 shares of S.A., or, in lieu thereof, 100 shares of U.G.C. and the cash and promissory notes previously received by defendant for 100 shares of S.A. upon dissolution and liquidation of S.A.[1] Defendant did not comply with the demand.

Plaintiff commenced the present action to reform the option and for specific performance on August 26, 1963. The trial court found that on or before September 12, 1961, plaintiff and defendant entered into an oral agreement whereby defendant granted to plaintiff an option to purchase 100 shares of U.G.C. stock and 100 shares of S.A. stock at a unit price of $39.36 per share, and that the option agreement as reduced to writing by defendant's attorney, through mutual mistake of plaintiff and defendant, did not set out what was orally agreed upon by the parties and did not express their true intentions. It concluded therefrom that the written option should be reformed to read as follows: "Sorge . . . grants to Lister . . . an irrevocable option to purchase from Sorge up to 100 shares of . . . [U.G.C.] and 100 shares of . . . [S.A.], owned by Sorge for the sum of $39.36 per share as a unit price in cash."

The trial court made additional findings responsive to the pleadings to the effect that plaintiff had no adequate legal remedy and was entitled to specific performance of the option agreement as reformed; that the contract as reformed was neither uncertain, unreasonable and unjust, nor impossible of performance; that plaintiff had not failed to make a valid tender of performance and that a tender by plaintiff to defendant would have served no useful purpose; and that the

[1]The alternative demand was not set forth in the notice itself but appeared in the accompanying escrow instructions.

consideration expressed in the option agreement was adequate. It further found that during the pendency of the action, U.G.C. had sold all its assets and its stockholders had received .3737 shares of stock of Bendix Corporation for each share of U.G.C.; that the 100 shares of U.G.C. stock which was the subject of the option between plaintiff and defendant had, by reason of the stock dividend and sale of U.G.C. assets, been converted into 261.59 shares of Bendix stock; and that defendant had in his possession 261.59 shares of Bendix stock, as well as $5,302 in promissory notes which he received upon the previous liquidation of S.A. The trial court concluded that upon payment of $3,936, plaintiff was entitled to receive from defendant the 261.59 shares of Bendix stock, the promissory notes in the amount of $5,302 and the sum of $2,143, which sum represented the cash received by defendant for 100 shares of S.A. upon its liquidation.

From a judgment entered in favor of plaintiff, defendant has appealed. He contends (1) there was no evidence to support a reformation of the option agreement, and (2) this is not a proper case for specific performance even if the contract is reformed.

REFORMATION

The parties are generally in agreement as to the principles of law governing reformation. ██ "The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." (*Lemoge Electric* v. *County of San Mateo*, 46 Cal.2d 659, 663 [297 P.2d 638].) ██ "To justify the court in changing the language of the instrument sought to be reformed, . . . it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be . . . clear and convincing. . . ." (*Cox* v. *Woods*, 67 Cal. 317-318 [7 P. 722].) The rule requiring clear and convincing evidence is addressed primarily to the trial court, and on appeal the question is whether there is substantial evidence to support the trial court's conclusion. (*Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732]; *Ciulla* v. *Telschow*, 152 Cal.App.2d 597, 600 [313 P.2d 188]; *Arsenian* v. *Meketarian*, 138 Cal.App.2d 627, 631 [292 P.2d 293]; *Vecki* v. *Sorensen*, 127 Cal.App.2d 407, 414 [273 P.2d 908].) The dissenting opinion in *Stromerson* v. *Averill, supra,* argues that in cases governed by the rule requiring clear and convincing evidence, the question on

appeal should be whether the evidence warrants the conclusion that it is highly probable that the fact to be proved exists.

We are of the opinion that the evidence in this case amply supports the trial court's finding in support of reformation, and that the trial judge could reasonably conclude therefrom not only that it was more probable than not that the parties orally agreed to something different from what was expressed in the writing, but that it was highly probable that they did so. Plaintiff testified that at the meeting on September 12, 1961, defendant said he was going to give plaintiff an option for 100 shares of U.G.C. and 100 shares of S.A., and that defendant and other members of the management group stated "they would offer . . . these options at the price of $39.36, which was the price that they had paid me for my stock, that I would pay that price . . . for a share of each corporation." Defendant testified to the contrary, denying there was any oral agreement to give plaintiff an option to purchase stock in both corporations as a unit, and stating he did not believe he ever had a discussion with plaintiff "about giving him S.A. stock." Mr. Fox, who was present at the September 12, meeting, testified he recalled no conversation in which defendant stated he was giving plaintiff an option for shares of U.G.C. and S.A.

The foregoing testimony alone is sufficient to support the findings since a conflict of testimony does not require denial of reformation, and the decision of the trial court on such conflicting evidence is conclusive on the appellate court. (*Arsenian* v. *Meketarian, supra*; *Vecki* v. *Sorensen, supra*.)

However, there is additional circumstantial evidence which lends further support to the trial court's findings. It was shown, for example, that in the entire history of the corporations there had never been a sale of stock of only one corporation, that there had been numerous sales of stock of both corporations as a unit, and that in 1958 plaintiff had sold stock of both corporations to defendant and other stockholders on a unit basis at the identical price set forth in the written option. It was also established by the evidence that both parties knew on September 12, 1961, that U.G.C. stock had a negative book value of minus $1.00 and S.A. stock had a book value of between $62 and $70, that defendant was aware the option given by him was part of an agreement whereby plaintiff was to obtain additional options from other members of the management group, and that he was informed by one of such members that the latter was giving plaintiff an option to

purchase U.G.C. and S.A. stock at a unit price of $39.36 per share. The coincidence of the figures or prices in the 1958 sale to defendant, in the option granted plaintiff by another member of the management group, and in the option executed by defendant, seems persuasive evidence that the stock on which plaintiff and defendant came to terms on September 12, 1961, was identical with that which was the subject matter of the 1958 sale and the option granted by the other member of management; namely, shares of both U.G.C. and S.A. (*Mills* v. *Schulba,* 95 Cal.App.2d 559, 562 [213 P.2d 408].)

Reformation may be based on solely circumstantial evidence. (*Sieger* v. *Standard Oil Co.,* 155 Cal.App.2d 649, 658-659 [318 P.2d 479]; *Mills* v. *Schulba, supra;* see *Owsley* v. *Matson,* 156 Cal. 401, 407 [104 P. 983].)

Defendant argues that any inference from previous stock sales was overcome or conclusively rebutted by uncontradicted evidence that the stockholder's agreement which required the unit practice was terminated prior to September 12, that plaintiff received a $3,000 promissory note from defendant as part of the same transaction, and that the written option made reference to shares escrowed with the corporation commissioner while S.A. stock was never so escrowed. Although the facts thus recited were uncontradicted, the inferences to be drawn therefrom were not. For example, it could be inferred from the existence of the stockholder's agreement that all prior sales were made on a unit basis because of the requirements of that agreement. But there was also evidence that such sales occurred in situations to which the agreement did not apply. Similarly, it could be inferred that the $3,000 promissory note changed the mathematics of the purchase price set forth in the written option. Yet the evidence showed the promissory note was not given as consideration for any promise by plaintiff to purchase stock at the price named in the option, but that the note and option constituted the consideration for other performance promised by plaintiff.

In any event, the trier of fact was free to draw or refuse to draw inferences reasonably deducible from the evidence, and to choose from among conflicting inferences (*Hamilton* v. *Pacific Elec. Ry Co.,* 12 Cal.2d 598, 602 [86 P.2d 829]; *Hicks* v. *Hicks,* 211 Cal.App.2d 144 [27 Cal.Rptr. 307]).

Defendant also argues that plaintiff's failure to note or discover the mistake in the written option before signing it constituted negligence which precluded reformation. Plaintiff did testify that it never occurred to him that the reference in

the writing to U.G.C. stock did not include S.A. stock because of the past practice regarding unit sales. Such testimony satisfactorily explained to the court the cause of plaintiff's failure to discover the mistake before signing, and supports the trial court's implied finding that plaintiff was not negligent or, if he was, that his negligence was excusable. (*Burt* v. *Los Angeles Olive Growers Assn.*, 175 Cal. 668, 675-676 [166 P. 993] ; *California Trust Co.* v. *Cohn*, 214 Cal. 619, 627 [7 P.2d 297] ; *Ciulla* v. *Telschow*, 152 Cal.App.2d 597 [313 P.2d 188]; *Mills* v. *Schulba*, 95 Cal.App.2d 559, 564 [213 P.2d 408] ; *Tomas* v. *Vaughn*, 63 Cal.App.2d 188, 194-195 [146 P.2d 499].)

SPECIFIC PERFORMANCE

Numerous arguments are advanced in opposition to specific performance of the contract as reformed. Defendant asserts that there was inadequate consideration and a failure of consideration. The trial court's finding that there was adequate consideration for the contract sought to be specifically enforced is supported by plaintiff's testimony that $39.36 was a reasonable price for shares of U.G.C. and S.A. as a unit, and by evidence of similar sales made at that price slightly more than three years before. Adequacy of the consideration must be determined wih reference to the date of the option rather than to the date of its exercise. (*Glascock* v. *Sukumlyn*, 131 Cal.App.2d 587 [281 P.2d 90] ; *Drullinger* v. *Erskine*, 71 Cal. App.2d 492 [163 P.2d 48].) Similarly, there was substantial evidence to support an implied finding that there was consideration for the option and no subsequent failure of that consideration. The trial court's finding that the contract was just and reasonable, as well as its finding that the contract was not uncertain, is also supported by substantial evidence. There is no merit in the argument that the contract was uncertain because no provision was made therein with reference to possible dissolution of the corporations, mergers, or stock dividends. "Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract." (*Martin* v. *Baird*, 124 Cal.App.2d 598, 601 [269 P.2d 54].) It is enough that the contract is " 'definite and certain . . . in its essential elements and in all . . . of its material, terms.' " (*Mueller* v. *Chandler*, 217 Cal.App.2d 521, 523 [31 Cal.Rptr. 646].)

The trial court's finding that a tender by plaintiff would have served no useful purpose is also assailed. The

evidence shows without conflict, however, that defendant informed plaintiff he would not deliver shares of S.A. under the option prior to plaintiff's attempt to exercise the option. Under such circumstances of repudiation of the contract by defendant, further tender of performance by plaintiff was unnecessary. (*Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825, 828 [334 P.2d 97].)

Defendant further argues that it was impossible for him to perform the reformed agreement since S.A. stock was not in existence after May 1962. Impossibility of performance will, of course, ordinarily preclude specific performance. However, the trial court did not order defendant to convey S.A. stock. It ordered the payment of money and conveyance of promissory notes received by defendant upon the dissolution of that corporation, said notes still being in defendant's possession. The question, therefore, becomes one of the propriety of such substituted performance rather than one of impossibility. The parties have cited no cases dealing with the precise question, but defendant seems to concede that in a proper case the court could order such substituted performance. We are of the opinion that general principles of equity support the type of relief decreed by the trial court. There is some analogy to be found in cases holding that a vendor of real property cannot defend against specific performance on the ground that his title is defective, but that he can be compelled to convey whatever interest in the property he possesses and to make payment for the deficiency in performance. (*Miller* v. *Dyer,* 20 Cal.2d 526 [127 P.2d 901, 141 A.L.R. 1428].) The following language used by the Supreme Court in a case involving a different problem seems appropriate to the case at hand: "If the court orders [the contract] to be performed, the decree should as nearly as possible require performance in accordance with its terms. . . . The result is more like an accounting between the parties than like an assessment of damages. . . ." (*Ellis* v. *Mihelis,* 60 Cal.2d 206, 219, 220 [32 Cal.Rptr. 415, 384 P.2d 7].)

We are also of the opinion that the trial court did not err in awarding plaintiff the stock dividend declared by U.G.C. after plaintiff served his first notice of exercise of the option, or, more accurately speaking, in holding that plaintiff was entitled to the benefit of that stock dividend. (*Ellis* v. *Mihelis, supra.*)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.