[Civ. No. 27344. First Dist., Div. One. May 12, 1971.]

WILLIAM B. ADDIEGO et al., Plaintiffs and Respondents, v. RICHARD HILL et al., Defendants and Appellants.

454

**COUNSEL**

Johnson, Harmon & Johnson and Robert H. Johnson for Defendants and Appellants.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Plaintiffs and Respondents.

**OPINION**

**SIMS, J.**—Defendants, who unsuccessfully appealed from a judgment which granted the plaintiffs' prayer for specific performance of a preemption agreement for the purchase from defendants of stock of a closely held corporation (see *Addiego* v. *Hill* (1968) 268 Cal.App.2d 280 [73 Cal.Rptr. 901]), now appeal from a post-judgment mandatory injunction which ordered them to carry out the judgment.

They contend that the trial court erred in the following particulars: (1) in ordering them to transfer their stock for the full amount of the purchase price fixed in the judgment without either discharging them from the injunction which prohibited their enjoyment of the fruits of the corporate business during the pendency of the litigation, or crediting them with interest on the amount of the purchase price which was retained and enjoyed by the plaintiffs during that period (see *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 219-222 [32 Cal.Rptr. 415, 384 P.2d 7]); (2) in concluding that the original judgment was res judicata as to the defendants' right to an offset against the purchase price; (3) in concluding that the defendants had no standing to object to the order because they claimed that the ownership of the stock was in a third party; (4) in purporting to exercise jurisdiction to order the defendants to perform acts, which were not within their power to perform, with respect to the corporation and third parties who themselves were neither agents of the defendants nor parties to the action; (5) in erroneously excluding evidence offered by the defendants to show that a third party claim made it impossible for defendants to deliver the stock; (6) in ordering the defendants and the escrow holder of the stock to perform acts in derrogation of and without mention of the rights of a third party claimant; and (7) in attempting to continue a prior injunction which had preserved the corporate assets and income during the appeal from the judgment.

Insofar as the defendants seek to reverse the court's order because of its effect on the rights and obligations of the corporation and other persons, there is no justifiable issue. Rightly or wrongly the corporation and its secretary performed sufficient acts at the behest of the defendants to relieve the defendants of any charge of contempt. They were discharged after plaintiffs secured an order to show cause to hold them in contempt. Any corporate officers or other third parties who were aggrieved by the post-judgment orders of the court are not before this court on this appeal. Moreover, by supplemental brief filed at the request of the court on the issue of the defendants' claim for credit of interest on the amount of the purchase price fixed in the judgment, the defendants acknowledged that all issues other than those above designated as (1), (2) and (3) may be disregarded. It is concluded for the reasons set forth below that the court erred in failing to hold an accounting so that specific performance could be equitably enforced despite the delay occasioned by the appeal from the judgment. The order is reversed and the case is remanded for that purpose.

The background and the facts concerning the prejudgment proceedings in this action are found in two prior appeals, one involving the pleadings ((1965) 238 Cal.App.2d 842), and the second the merits of the judgment

((1968) 268 Cal.App.2d 280). They need not be repeated here. The controversy has become unduly complicated because neither the plaintiffs, who successfully asserted their preemption rights, nor the defendants, who contended that the plaintiffs failed to give an adequate and timely offer in response to the notice of the proposed sale of the stock in question to a third party offeror, attempted to join that offeror as a party. Confusion has been engendered by a failure to distinguish between the rights of the third party as determined vis-à-vis the plaintiffs and defendants, and as they might have existed between the third party and the plaintiffs if the former in fact acquired the defendants' stock free of the preemptive rights of the plaintiff. As noted the issues revolving about those claims are no longer pressed by the defendants, and attention is directed to their attack on the trial court's refusal to modify the amount of the purchase price as fixed by the judgment.

The judgment, which was affirmed on the second appeal, was originally entered April 10, 1967. It provides: "WHEREFORE, by reason of the law and the findings of fact aforesaid, it is ORDERED, ADJUDGED, AND DECREED as follows:

"1. That the defendants, RICHARD HILL and ALBERT BINDI, shall forthwith endorse and deliver over to plaintiffs the Seven Thousand (7,000) shares of BAHL CORPORATION stock now standing in the name of the defendants, and plaintiffs shall pay to the defendants therefor the sum of One Hundred Fifteen Thousand One Hundred Twenty-Nine Dollars Seventy-Four cents ($115,129.74).

"2. That plaintiffs shall have and recover from defendants their costs herein the sum of $2,011.23."

The prior opinion recites: "Upon learning that after entry of the judgment defendants had on April 24, 1967, held a meeting of the board of directors of the corporation and caused a dividend to be declared over the objection of plaintiffs, the court issued a post-judgment injunction restraining defendants from all activities in relation to the corporation, to preserve the status quo until the judgment became final." (268 Cal.App.2d at p. 286.)[1] The defendants appealed from the post-judgment injunction as well as from the judgment itself.

---

[1]This order reads in part: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that pending a final judgment herein the defendants, their employees, servants, agents and proxy holders of any of the defendants' shares of stock of BAHL CORPORATION be, and they are, hereby enjoined and restrained from doing any act whatsoever affecting the assets of BAHL CORPORATION other than is necessary to preserve the assets of the corporation; nor shall they permit any such act to be performed on behalf of or for the benefit of or by the defendants acting either as owners of shares of stock of the corporation or as its directors, or otherwise, and that defendants shall exercise no act or

The court disposed of the appeal from the post-judgment order as follows: "Finally, we turn to defendants' contention that the trial court erred in issuing its post-judgment injunction restraining defendants from all activities in connection with the corporation. This contention is likewise without merit. As indicated above, after the entry and service of the judgment in favor of plaintiffs in the instant matter on April 10, defendants called a meeting of the board of directors for 8:30 a.m. on April 17, 1967. This notice was not delivered to plaintiff Addiego until after the time scheduled for the meeting. The meeting was then postponed until April 24, 1967. At that time, over the objection of plaintiffs, defendants declared dividends. As defendants owned the controlling shares in the corporation, they could easily have drained all of the cash out of the corporation pending the appeal. Certainly, the trial court had authority to take whatever steps were necessary to preserve the corporation and its assets during the pendency of this appeal (Code Civ. Proc., § 564, subd. 4). In the instant case, plaintiffs first moved for an appointment of a receiver which also would have been proper under the circumstances (*Sibert* v. *Shaver,* 113 Cal.App.2d 19 . . .). The court, however, decided that a receiver was not necessary as the shares of stock were already in the hands of an escrow holder. Therefore, the court entered its order restraining defendants from any further activity with respect to the corporation in order to preserve it. This action, under the circumstances, was entirely proper and in no way constitutes an abuse of discretion." (268 Cal.App.2d at pp. 289-290.)

On February 18, 1969 the remittitur was filed in the lower court. On March 3, 1969 the plaintiffs' attorney filed a declaration and application for an order requiring the defendants to show why they should not be adjudged guilty of contempt of court for failure to carry out the judgment. The declaration alleges that plaintiffs caused the defendant Bindi to be served with a copy of the judgment and the remittitur, that the plaintiffs are ready, able and willing to pay the amount fixed in the judgment, and that the defendants have failed to endorse the stock certificates held by the escrow holder to whom the certificates were delivered when originally issued. The court granted an order to show cause.

In response the defendants' attorney filed a declaration and points and authorities in which various objections related to the third party claimant were interposed. At a continued hearing on March 20, 1969 the court threatened to find the defendants in contempt if the stock were not transferred, and continued the matter until April 28th. At a hearing on that

---

acts of ownership over the corporation whatsoever including, but not limited to, the acts of declaring or paying a dividend [*sic*] or in any way distributing any of the assets of BAHL CORPORATION to its shareholders."

date the court authorized the order dated April 29, 1969 from which this appeal has been taken. Insofar as the issue now remaining on appeal is concerned this order provided that the defendants should instruct the escrow holder as follows: "To deliver Certificates No. 9 and 10 [to be issued to plaintiffs on the cancellation of the certificates originally issued to defendants] to plaintiffs for the sum of $113,118.51 in cash (being the amount of $115,129.74 less costs in the amount of $2,011.23 as set forth in the judgment) and receive their receipts therefor."[2]

On May 7, 1969 the defendants filed their notice of motion to correct and modify the post-judgment mandatory injunction, and points and authorities in support of the motion. They sought to correct the order to provide that the purchase price should be "the sum of $115,129.74, plus 7% legal interest thereon from date of Judgment (April 10, 1967) to date of payment, as an offset to rents and profits accrued in said Bahl Corporation during the pendency of the appeal herein, but less the sum of $2,394.14 costs due from defendants to plaintiffs herein." (The increase in costs represents $382.91 costs on appeal admittedly due from defendants to plaintiffs.) Other modifications were directed to points which are no

---

[2]The complete order reads, after preliminary recitals, "IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

"1. That the defendants RICHARD HILL and ALBERT BINDI shall forthwith take whatever steps are necessary to cause BAHL CORPORATION to issue its stock certificates as follows: (a) Certificate No. 9 to WILLIAM B. ADDIEGO for 4,000 shares. (b) Certificate No. 10 to HARRY J. LOVE for 3,000 shares.

"2. That the defendants shall cause said Certificates No. 9 and 10 to be delivered forthwith to PAUL F. KELLY, Attorney at Law and Escrow Holder herein, with the following instructions: (a) to cancel Certificate No. 1 in the name of defendant ALBERT BINDI for 4,000 shares, which said Certificate is now in the hands of the Escrow Holder. (b) To cancel Certificate No. 7 in the name of defendant RICHARD HILL for 3,000 shares, which said Certificate is now in the hands of the Escrow Holder. (c) To deliver Certificates No. 9 and 10 to plaintiffs for the sum of $113,118.51 in cash (being the amount of $115,129.74 less costs in the amount of $2,011.23 as set forth in the judgment) and receive their receipts therefor. (d) To mail a copy of said receipts from the plaintiffs to the office of the Corporation Commissioner together with a copy of the judgment herein together with a copy of this Order within five (5) days after such transfer is consummated in accordance with Section 260.141.14 of Title 10 of Regulations.

"3. That wherein this order requires the defendants RICHARD HILL and ALBERT BINDI to do all of the things and acts under Paragraphs 1. and 2. hereof, the Order extends with equal force and effect to their employees, servants, agents, attorneys, proxy holders of any of defendants' shares of stock of BAHL CORPORATION, a California corporation, and to the officers and directors of said BAHL CORPORATION.

"4. Said PAUL F. KELLY, attorney at law, and Escrow Holder herein, is hereby directed to comply with Paragraph 2. hereof.

"5. That except as herein specifically provided the Order Pending Final Judgment filed herein on June 5, 1967 shall remain in full force and effect.

"6. That a further hearing on the Order to Show Cause in re Contempt Issued on March 3, 1969 is hereby set for Monday, May 12, 1969 at 4:00 o'clock P.M. of said day."

longer urged on appeal. The defendants failed to secure an order shortening time for this notice of motion and it was reset and served for hearing on May 26, 1969.

Meanwhile a further hearing transpired on May 12, 1969. The stock was not yet transferred, but the defendant Bindi signed a stock transfer form prepared by the attorney for the plaintiffs when ordered to do so by the court. Further controversy revolved about an affidavit of prejudice under section 170.6 of the Code of Civil Procedure filed by the secretary of the corporation, who appeared with his attorney at the hearing when served with a copy of the order of April 29th. All matters were continued two weeks.

At the hearing on May 26th, the defendants produced and delivered to plaintiffs a power of attorney from the defendant Hill, who had been out of the state, granting the plaintiffs power to do all Hill could personally do to effect a transfer of his stock. The court then discharged the original order to show cause as to the defendants Bindi and Hill. Further controversy between the secretary and the plaintiffs was continued from time to time, and the defendants' motion to modify the April 29th order was argued and submitted. On June 23, 1969 the motion to modify was denied and this appeal ensued.

The trial court properly exercised its powers to adjudge the defendants guilty of contempt in order to carry out the judgment for specific performance which had been affirmed on appeal. (See *'76 L. & W. Co*. v. *Superior Court* (1892) 93 Cal. 139, 143 [28 P. 813].) Nevertheless, the question of whether the court properly computed the amount to be paid may be reviewed.

In *Ellis* v. *Mihelis, supra,* 60 Cal.2d 206, the purchaser of real property brought an action for specific performance against the seller. The court held that since the rents and profits from the time the transaction should have been effected until it was ultimately completed were awarded to the purchaser, the seller was entitled to an offset against the rents and profits awarded to the purchaser, equal to interest on the purchase price. The court stated, "The following general rules are applicable where damages are awarded incident to a decree of specific performance: A party to a contract for the purchase or exchange of land who is entitled to a decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he was entitled to a conveyance. . . . The complainant affirms the contract as being still in force and asks that it be performed. If the court orders it to be performed, the decree should as nearly as possible require performance in accordance with its terms.

One of the terms is the date fixed by it for completion, and since that date is past, the court in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay and permits the defendant to offset such amounts as may be appropriate. The result is more like an accounting between the parties than like an assessment of damages. (See, e.g., *Heinlen* v. *Martin,* 53 Cal. 321, 342-343; Note 7 A.L.R.2d 1204, 1206.)

█ "The guiding principle with respect to the calculation of the damages incident to the decree of specific performance, as we have seen, is to relate the performance back to the date set in the contract. Timely performance of the contract would result in the purchaser's receiving the rents and profits of the land but being denied the use of the purchase money, and a purchaser who seeks to recover rents and profits must permit an offset for his use of the purchase funds during the period that performance was delayed. In an early case this court held that a defendant in a situation like the one before us should be permitted to offset against the profits interest on the entire purchase price. (*Heinlen* v. *Martin* (1879) 53 Cal. 321, 343.) This holding is the overwhelming weight of authority. [Citations.]" (60 Cal.2d at pp. 219-220. See also *Re* v. *Wells Fargo Bank* (1969) 269 Cal.App.2d 783, 788 [75 Cal.Rptr. 367]; and note, *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828, 847-848 [83 Cal.Rptr. 855]; *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 767 [75 Cal.Rptr. 533]; and *Lister* v. *Sorge* (1968) 260 Cal.App.2d 333, 342 [67 Cal.Rptr. 63].)

█ █ The plaintiffs had the use of the purchase price until they deposited it with the escrow agent. Under the judgment and order of the court they also received an interest in all of the earnings of the corporation as they existed on April 10, 1967 and accrued thereafter. Reason suggests that the principles applicable to an action for the specific performance of a contract to convey real property should be applicable to an action to secure specific performance of a contract to purchase closely held stock. (See *Lister* v. *Sorge, supra,* 260 Cal.App.2d 333, 341-342.)

The reasons advanced by the lower court upon which the purchaser-plaintiffs rely are not persuasive. █ █ It is true that the judgment fixed a definite sum as the consideration to be paid for the stock. It is likewise established from examination of the record on the last appeal that the defendants raised the question of double income to the purchaser in their opening brief, their reply brief, and in their petitions for rehearing, and for a hearing by the Supreme Court. Nevertheless, the judgment could only speak as of the time it was rendered and entered, April 10, 1967. Up to that time, and prior to the first post-judgment injunction, which was the subject of the earlier appeal, the defendants, as controlling stockholders,

were apparently able to enjoy the fruits of the corporate business as they saw fit. Two things preclude the figure in the original judgment as being res judicata as to the amount to be paid two years later. As noted in *Ellis* v. *Mihelis, supra,* "The compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages." (60 Cal.2d at p. 219.) It, therefore, is subject to adjustment. Secondly, although the court on the first appeal upheld the first post-judgment order in order to preserve the assets and income of the corporation, it did not determine which party should enjoy the fruits of the accumulated and accumulating earnings. The trial court was therefore free to adjust the purchase price when the defendants requested it to do so, and erred in failing to act on their request.

■ The fact that the defendants claimed a third party was entitled to their stock does not defeat their request for equitable treatment. The judgment of necessity establishes that the rights of any third party claimants were subordinate to the rights of the defendants as far as this action is concerned. The fact that the defendants may hold the purchase price for a third party with valid claims against them should not defeat their right to have the purchase price determined in an equitable manner.

■ The defendants, having occasioned the delay in the specific performance by objections which have been adjudicated adversely to them, should not profit from their actions. *Ellis* v. *Mihelis, supra,* suggests that the offset of interest is only as against the accumulating profits which the purchaser acquires with his purchase. So here, any adjustment to the purchase price by reason of interest on the sums retained by the purchasers during the pendency of the appeal should not exceed the increase in the proportionate net worth of the corporation attributable to the stock in question by reason of the business transacted by the corporation in the interim.

The order appealed from is reversed, and the case is remanded for a post-judgment accounting between the parties in accordance with the principles set forth herein.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied June 3, 1971, and respondents' petition for a hearing by the Supreme Court was denied July 7, 1971.