[No. B010624. Second Dist., Div. Four. May 17, 1985.]

JACK ABADJIAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GULF OIL CORPORATION, Real Party in Interest;
THRIFTY OIL CO., Movant.

## COUNSEL

Shapiro, Laufer, Posell & Close, Kenneth P. Roberts and Douglas L. Carden for Petitioners.

No appearance for Respondent.

McCutchen, Black, Verleger & Shea, Jack D. Fudge, Ralph Zarefsky, Louis A. Karasik and Mary E. Tarduno for Real Party in Interest.

Smaltz & Neelley, Donald C. Smaltz, Leighton M. Anderson and Thomas H. Mabie for Movant.

## OPINION

**WOODS, P. J.**—This original proceeding in mandate was commenced by eight gasoline station franchisees who seek to vacate an order of respondent court that compels them to pay rent to their franchisor during the pendency of their underlying action (to compel sale of the franchised premises to them under a preemptive purchase right) and the consolidated unlawful detainer action by the franchisor.

The determinative issue upon which the alternative writ issued is whether a franchisee who formally stipulated to pay rent during the pendency of his action to enforce a preemptive purchase right (right of first refusal) was correctly compelled to perform under that stipulation after the trial court determined by summary adjudication of issues that the franchisees were wrongfully prevented by the franchisor from exercising their valid preemptive purchase rights.

FACTS

The material facts are not in dispute.

On and prior to September 1980, the eight petitioners leased and operated eight separate gasoline stations under franchise from real party in interest

Gulf Oil Corporation (hereafter Gulf). In September 1980, Gulf elected to withdraw from the gasoline distribution market in the Southern California area and entered into a contract with Thrifty Oil Co. (hereafter Thrifty) to sell Thrifty 200 gasoline stations in the area, including the eight stations leased and operated by petitioners. The contract stipulated a single package purchase price and subordinated Thrifty's rights in the properties to whatever rights the Gulf franchisees might have under the Federal Petroleum Marketing Practices Act, 15 United States Code section 2801 et seq. (the FMPA).

By identical duplicate original letters dated November 24, 1980, Gulf notified each of the petitioners of Gulf's intent to withdraw from the California, Arizona and Nevada gasoline markets and its agreement to sell "most of its service stations" in those states to Thrifty Oil Co. The letter assured petitioners of Gulf's awareness of their respective preemptive purchase rights under the Petroleum Market Practices Act. It stated "The sale of most service stations to Thrifty Oil Co. will be carried out over the next several months. Should the station which you lease from Gulf be one of those which is included in the sale to Thrifty Oil Co., you will be given notification and the offer required by the Petroleum Marketing Practices Act to acquire the station yourself."

Gulf included all of petitioners' leased stations in its sale to Thrifty, but Gulf did not tender sale offers to petitioners. Each petitioner demanded that Gulf tender the promised offer of sale.

On August 13, 1981, petitioners filed their underlying action against Gulf and Thrifty claiming that the sale was a conspiracy to violate their rights under the FMPA by denying their preemptive purchase rights as to the respective premises. Petitioners sought to compel sales to them and enjoin the sale to Thrifty.

Because of petitioners' action, Gulf did not attempt to transfer possession of the subject premises to Thrifty. Gulf cross-complained for declaratory relief and an advisement of rights.

On May 3, 1982, petitioners' leases expired and they refused to renew the leases on the increased rental terms specified by Gulf. Gulf demanded that petitioners vacate the respective premises and petitioners refused. Gulf filed unlawful detainer actions in respondent court against petitioners.

Petitioners' actions were consolidated for all purposes with Gulf's unlawful detainer actions and the cross-actions of Gulf and Thrifty. All petitioners except Stephen Webber entered into formal written stipulations with Gulf

to continue paying rent to Gulf during the pendency of the actions as though such payments "had been paid into court pursuant to an order entered under Code of Civil Procedure section 1174(a)."

Between the time of entry of the stipulations and 1984, the petitioners, at different times, ceased paying pendente lite rent to Gulf.

In May 1983, Thrifty filed a cross-complaint against Gulf for breach of the sale contract and for a declaration of rights thereunder.

On August 31, 1983, Judge Richard Schauer summarily adjudicated the following issues: "(1. On or before September 30, 1980, Gulf made a determination to withdraw from the Southern California gasoline market.

"(2. On or before September 30, 1980, Gulf made a determination to sell its Southern California service stations, including the service stations operated by plaintiffs."

On December 10, 1984, Judge Ronald Swearinger issued an order under Code of Civil Procedure section 437c summarily adjudicating the following issues in favor of petitioners: "(a. The September 30, 1980 agreement between Defendants [Gulf and Thrifty] was an event and an action that gave to each moving Plaintiff a right of first refusal to purchase Gulf's interest in their respective service stations.

"(b. Under the FMPA Defendant Gulf was obligated to offer each moving Plaintiff the right as aforesaid at least 45 days prior to the agreed upon closing date of the Gulf sale to Thrifty (May 1981)."

Gulf moved to compel petitioners (except petitioner Stephen Webber) to perform under their 1982 stipulations to pay pendente lite rent and moved to compel petitioner Stephen Webber to deposit pendente lite rent with the court pursuant to Code of Civil Procedure section 1174, subdivision (a).

Gulf's motion was granted on January 22, 1985. Petitioner Webber was ordered to commence rent deposits and the remaining petitioners were ordered to pay their pro rata share of the $190,000 delinquent rent and to commence current payments directly to Gulf pursuant to their prior stipulations.

The petition for writ of mandate was filed February 1, 1985, and, after reviewing the real parties' preliminary opposition, we issued the alternative writ to determine the question of petitioners' obligation to continue to pay

pendente lite rentals after the December 10, 1984, summary adjudication of issues.

## DISCUSSION

## I

■ As a preliminary matter, we reject the principal contention of Thrifty that the substantive merit of the issues summarily adjudicated by Judge Swearinger on December 10, 1984, may and must be reviewed by this court in its review of the subsequent order on the pendente lite rent dispute.

Code of Civil Procedure section 437c, subdivision (*l*) provides that a party must file a petition for extraordinary writ review of an order summarily adjudicating issues within 10 days of service of a written notice of ruling or within a maximum of 20 days from such service if the superior court allows such extension of time. Neither Thrifty nor Gulf filed a petition for review of the December 10, 1984 order and the time for such filing had long passed when the present petition was filed February 1.

The implicit purpose of the time limitation for extraordinary writ review of such orders is to ensure prompt, prejudgment determination of issues which are no longer controverted in the action. As was recently held in *Sturm, Ruger & Co.* v. *Superior Court* (1985) 164 Cal.App.3d 579 [210 Cal.Rptr. 573], the section 437c, subdivision (*l*) limitation period for seeking review by writ is jurisdictional. Accordingly, this court may not now review the merits of the December 10, 1984, ruling in conjunction with the present petition. Real parties elected in December 1984 not to seek prejudgment review of the critical issues. These issues thus must be deemed established for purposes of trial and in like manner must be deemed established for purposes of determining petitioners' status relative to collateral issues in the action.

Thrifty also contends that Code of Civil Procedure section 437c, subdivision (*l*) does not bar present writ review of the issues summarily adjudicated because the statute only sets a time limit as to petitions for writ review and not *oppositions* to subsequent petitions challenging later rulings. This sophistic argument conflicts with the purpose of promptly finalizing a summary adjudication of issues and with the implicit intent of the statutory time limitation for writ review.

Thrifty also contends that *Sturm, Ruger & Co.* v. *Superior Court, supra,* 164 Cal.App.3d 579, is distinguishable because that court, upon denying as untimely a petition for writ challenging an order denying a motion for sum-

mary judgment, stated that the moving party could seek adjudication of the same issues at trial. This ignores the fundamental fact that in *Sturm* the issues were not summarily adjudicated while here they were. Gulf and Thrifty are not permitted to controvert the summarily adjudicated issues at trial or in other pretrial motions.

■ Additionally, we accept petitioners' argument that Thrifty does not have standing to oppose the present petition as a real party in interest because Thrifty did not participate in the trial court proceedings concerning the pendente lite rent motion and Thrifty is not a party favored or affected by the challenged ruling. Thrifty here seeks only a second chance at disproving petitioners' preemptive purchase rights.

■ As a second preliminary point, it must be pointed out that it was an abuse of discretion for respondent to have refused to consider the facts summarily adjudicated on December 10, 1984, in its determination of the pendente lite rent dispute. Respondent's rationale was that summarily adjudicated issues are not final in the sense that they might be reversed on postjudgment appeal. However, summary adjudication of an issue under Code of Civil Procedure section 437c is a judicial determination that the issue is not subject to further controversy in the action and is deemed established at the most critical stage of the action, the trial. Summary adjudication of issues has the same evidentiary effect as a summary judgment except that it does not determine all the material issues in the action and thus precipitate entry of judgment. A summary adjudication is binding upon the trial court prior to judgment unless an appellate court vacates the summary adjudication on pretrial review under section 437c or the trial court does so upon reconsideration of its ruling.

In the underlying action, respondent did not reconsider and vacate its summary adjudication of issues. Instead, it purported to selectively ignore the summary adjudication for purposes of determining the rent issue. Permitting this procedure would frustrate the intended expediency of summary adjudication of issues and would result in potentially conflicting rulings.

Determination of the pendente lite rent dispute must be on the premise that petitioners held valid preemptive purchase rights that Gulf refused to honor.

■ A third preliminary point to be established prior to discussion of the substantive issue is that respondent had discretion in ruling upon Gulf's motion to refuse to compel petitioners to continue performance under their May 1982 stipulations to pay pendente lite rent because the December 10, 1984 summary adjudication of issues constituted a significant change of

circumstances relative to the rent obligation. Prior to the summary adjudication, the existence of petitioners' FMPA preemptive purchase rights and Gulf's wrongful refusal to honor those rights were at issue in the action. Adjudication of these issues indisputably changed the material circumstances relative to the respective rights and duties of the parties. If the legal significance of these changed circumstances rendered it unjust to enforce the stipulations, respondent had discretion to refuse such enforcement. (*Gonzales* v. *Pacific Greyhound Lines* (1950) 34 Cal.2d 749, 755 [214 P.2d 809]; *Mott* v. *Tomlinson* (1961) 194 Cal.App.2d 886, 893 [15 Cal.Rptr. 541]; *Brown* v. *Superior Court* (1935) 10 Cal.App.2d 365, 368 [52 P.2d 256].)

## II

We turn now to the determinative question of whether Gulf's refusal to tender the sale offers required by petitioners' preemptive purchase rights obviates the necessity that a contract of sale have been created by offer and acceptance to transform petitioners from lessees (now holdover tenants) into vendees in possession.

Petitioners contend that due to the December 10, 1984, summary adjudication of issues described above they ceased to be lessees and became "vendees in possession" when Gulf wrongfully refused to offer them the respective gasoline stations by May 1981. Arguing by analogy to reported cases holding that lessees become vendees in possession without further rental obligations upon the unjustified refusal of lessors to honor exercised purchase options created by the lease agreements, petitioners conclude that Gulf's denial of their FMPA preemptive purchase rights transformed them into vendees in possession without further obligation to pay rent.

Below, and in its preliminary opposition to the petition, Gulf simply disputed that the analogy urged by petitioners is valid. Gulf's principal contention has been that until a binding contract of sale is created by actual offer and acceptance, a lessee with a preemptive purchase right is not relieved of further rent obligations as a lessee.

In its return, Gulf, for the first time, relies upon *Maron* v. *Howard* (1968) 258 Cal.App.2d 473 [66 Cal.Rptr. 70], which, on materially indistinguishable facts, held that absent tender of a sale offer on specific terms by the lessor the mere notification by a lessee of his intent to exercise a contractual preemptive purchase right does not create a contract of sale and thus does not transform the lessee into a vendee.

*Maron* v. *Howard, supra,* 258 Cal.App.2d 473, squarely supports Gulf's position. *Maron* involved a lessee of real property who elected to exercise

the preemptive purchase right contained in his lease after he learned that the lessor had contracted to sell the premises to a third party as a part of a larger parcel of land. That contract specified only one total purchase price without itemization of the pro rata price of the leased premises. The lessor was aware of but did not perform his obligation to first tender an offer to the lessee. The third party contract stated that the purchaser was aware of the lessee's preemptive right but intended to take title despite it. On appeal it was held that the preemptive right was enforceable and that the holder had a period of time after entry of judgment for specific performance to make cash payment of the purchase price fixed by the trial court. However, it was also held that the lessee was not entitled to credit against the purchase price for the rental payments he made for five years after notifying the lessor of his intent to exercise his contractual preemptive purchase right. As we will discuss, we disagree with this aspect of the holding.

*Maron* adopted the rule previously applied to situations where an owner attempted to ignore a lessee's exercise of his option to purchase. The rule, simply stated, is that unless the lease so provides, the lessee is not relieved of the obligation to pay rent until a binding contract of sale is created by his actual acceptance of the lessor's tendered "first refusal" offer.

*Maron* apparently interpreted the lease agreement before it as requiring that to effectively exercise the preemptive purchase right the lessee had to tender or pay the full purchase price within five days of the lessor tendering an offer. The lessee could neither accept an offer that had not been made, nor pay or tender payment of a purchase price that was unspecified, due to the bulk nature of the third party sale. Therefore, *Maron* concluded that no binding contract had been created that could transform the lessee into a vendee in possession.

We believe *Maron* to be correct and controlling insofar as it holds that a lessee holding a preemptive right is not entitled to avoid continued rental obligations in the same manner as a lessee who exercises a purchase option. The latter is subject to a binding contractual obligation to purchase while the former is not. The preemptive purchase right entitles the lessee to compel specific performance of the obligation to tender a sale offer, but does not necessarily bind the lessee to accept the offer. Here, petitioners do not yet know the precise terms of purchase and, accordingly, have not irrevocably promised to accept such terms.

Analysis of the cases concerning exercise of a lessee's option to purchase is consistent with this result.

In *Sacks* v. *Hayes* (1956) 146 Cal.App.2d Supp. 885 [304 P.2d 281], defendant entered into a written lease containing an option to purchase at a

specific purchase price. Neither the lease nor the option provided for continued payment of rent after exercise of the option. The lessee timely exercised the option. The lessor did not refuse to perform the sale but sued the optionee for unpaid rent claimed to have accrued between exercise of the option and consummation of the sale. It was held that the exercise of the option terminated the landlord-tenant relationship and the attendant rent obligation. The court followed the established rule that exercise of the option is an acceptance of an outstanding offer to sell and thus creates a binding contract of sale that exclusively controls the parties' respective duties. (*Id.*, at pp. 887-888.)

*Erich* v. *Granoff* (1980) 109 Cal.App.3d 920 [167 Cal.Rptr. 538], involved lessees with an option to purchase included in their lease contract. Lessees timely notified the lessor of their exercise of the option but the lessor refused to consummate the sale. Lessees continued to pay rent until they were notified by the lessor that the lease term had expired and that he considered them to be month-to-month tenants at an increased rental. The lessor then commenced an unlawful detainer action and obtained a judgment for possession, which judgment was stayed pending appeal upon the lessees' undertaking. Meanwhile, the lessees sued for specific performance and prevailed. On appeal, it was held that the option provisions in the lease did not specify that tender of the purchase price was a condition precedent to exercise of the purchase option. Thus, under the prevailing rule the lessees' mere notice of such exercise created a binding contract of sale. The lessor's refusal to cooperate excused the lessees/vendees from timely performance of their remaining purchase obligations and terminated their obligation to pay rent as of the date that the sale would have closed but for the lessor's lack of cooperation.

Because the existence of a binding sale contract is the event deemed necessary to transform a lessee into a "vendee in possession," this distinction between an option situation and a preemptive purchase right situation is critical.

Petitioners, despite maintaining their action to compel performance of Gulf's duty to tender a sale offer at a price set by respondent, may decline to accept the offer. They are not, under the principles of law discussed herein, bound to purchase at whatever price is tendered. Accordingly, they are not entitled to the benefits of a "vendee in possession" who would be so bound.

■ Our holding does not constitute an adoption of the *Maron* view that a holder of a preemptive purchase right is not entitled to a sale offer as similar as possible to the third party's offer; nor that such holder is not

entitled to a credit for rental payments against the purchase price eventually set by the trial court. *Maron* did not discuss applicable equitable principles in decreeing that no such credit is required.

As is pointed out in *Re v. Wells Fargo Bank* (1969) 269 Cal.App.2d 783 [75 Cal.Rptr. 367], it is within the equitable power of the trial court granting specific performance to create a setoff against the purchase price for rents paid. The setoff to be retroactive to the time the sale should have consummated but for the lessor's wrongful refusal to tender an offer under the lessee's preemptive purchase right.

*Re* involved a lessee with a preemptive purchase right that was wrongfully ignored by the lessor's probate representative. Rents received from the lessee and two other lessees of the property subject to the preemptive right were deposited pending judgment. The lessees had been allowed to withdraw from escrow the purchase price they had deposited when they asserted their preemptive purchase right. They thus received the benefit of the interim use of that money until entry of judgment for specific performance. *Re* enforced the preemptive right and awarded the deposited rents to the purchasing lessee under the rule of equity that "'A party to a contract for the purchase . . . of land who is entitled to a decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he is entitled to a conveyance.' [Citation.] The reason for the rule is the desire of equity courts to relate the performance back to the date set in the contract. . . . 'A court of equity will not permit a party to obtain such an undue advantage.'" (*Id.*, 269 Cal.App.2d at p. 788.) (Accord *Ellis v. Mihelis* (1963) 60 Cal.2d 206, 219-220 [32 Cal.Rptr. 415, 384 P.2d 7]; *Heinlen v. Martin* (1879) 53 Cal. 321, 343; *Erich v. Granoff* (1980) 109 Cal.App.3d 920, 931 [167 Cal.Rptr. 538]; *Addiego v. Hill* (1971) 17 Cal.App.3d 453, 461-462 [95 Cal.Rptr. 151].) To allow such vendees the interim rents and profits from the property as well as the interest on the released purchase money without an offset in the lessor's favor for the interest that lessees would not have earned had the contract been consummated when it should have would place lessees in a better position than if the contract had been timely performed.

Application of this equitable principle to the underlying action strongly suggests that if judgment for specific performance is entered for petitioners, they would be entitled to an incidental apportionment of benefits and costs (specifically including the crediting of rentals paid from May 1981 through entry of judgment against the purchase price) and Gulf would be entitled to a setoff that includes the interest it would have earned had the purchase price been paid in May 1981. Otherwise Gulf would receive payment of a full purchase price and rental payments that would have gone to that pur-

chase price had Gulf timely honored petitioners' preemptive rights. As was stated in *Addiego* v. *Hill, supra,* 17 Cal.App.3d at page 462, "The defendants, having occasioned the delay in the specific performance by objections which have been adjudicated adversely to them, should not profit from their actions."

The alternative writ is discharged, the peremptory writ is denied, and the stay issued by this court shall terminate when this opinion becomes final as to this court.

McClosky, J., and Arguelles, J., concurred.

Petitioners' application for review by the Supreme Court was denied August 21, 1985.