Filed 5/1/23 Ruby Falls Fund v. Aqualegacy Development CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RUBY FALLS FUND, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AQUALEGACY DEVELOPMENT, LLC,<br><br>Defendant and Respondent. | H048978<br>(Monterey County<br>Super. Ct. No. 16CV001078) |
| AQUALEGACY DEVELOPMENT, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>2012 CANROW OWNER, LLC et al.,<br><br>Defendants and Respondents. | H049062<br>(Monterey County<br>Super. Ct. No. 16CV001078) |
| AQUALEGACY DEVELOPMENT, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>2012 CANROW OWNER, LLC,<br><br>Defendant and Appellant. | H049160<br>(Monterey County<br>Super. Ct. No. 16CV001078) |

| | |
|---|---|
| AQUALEGACY DEVELOPMENT, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> 2012 CANROW OWNER, LLC, <br><br> Defendant and Appellant. | H049368 <br> (Monterey County <br> Super. Ct. No. 16CV001078) |

## I. INTRODUCTION

These appeals arise from a dispute regarding the ownership of waterfront property on Cannery Row in Monterey. AquaLegacy Development, LLC (AquaLegacy) was the successful bidder at the foreclosure sale held under the second deed of trust on the property and thereafter recorded a trustee's deed upon sale. However, the property remained encumbered by a first deed of trust that was in default. During the relevant time period, the membership of 2012 Canrow Owner, LLC (Canrow) consisted of the numerous investors in the promissory note secured by the first deed of trust.

AquaLegacy engaged in lengthy negotiations with Canrow regarding the title issues that AquaLegacy had discovered and AquaLegacy's efforts to obtain financing to pay off the debt owed under the first deed of trust. While negotiations were ongoing, Canrow, through trustee Medallion Servicing, LLC (Medallion Servicing), held a foreclosure sale under the first deed of trust without notice to AquaLegacy, and obtained the property with a credit bid. After recording a trustee's deed, Canrow sold the property to Ruby Falls Fund, LLC (Ruby Falls).

AquaLegacy then filed an action against numerous defendants, including Canrow, Medallion Servicing, and Ruby Falls, alleging that Canrow's foreclosure was wrongful and seeking to set aside the foreclosure sale and Canrow's trustee's deed and to quiet title in AquaLegacy. AquaLegacy also sought to recover under various other causes of action, including slander of title. Canrow and Medallion Servicing filed a cross-complaint that

2

included a cause of action for reformation of the trustee's deed that Canrow had recorded following the trustee's sale of the property to correct the error misidentifying the trustee.

Following a court trial, the trial court issued a statement of decision ruling that Canrow's foreclosure under the first deed of trust was wrongful because, among other things, Canrow had not given the statutory notice of the foreclosure sale to AquaLegacy required under Civil Code section 2924b.[1]

The judgment entered on March 4, 2021, provides that the wrongful foreclosure is set aside; Canrow's trustee's deed is void and set aside; title is quieted in AquaLegacy as to any adverse claims by Canrow, Medallion Servicing, and Ruby Falls; the property remains encumbered by the first deed of trust and AquaLegacy's title is subject to the first deed of trust; foreclosure proceedings pursuant to the notice of default on the first deed of trust are stayed for 150 days after finality of the judgment; at such time that Canrow, Medallion Servicing, and/or Ruby Falls do proceed, they shall do so as provided by law and provide statutory notice of any foreclosure to AquaLegacy; and "[a]ll defendants, including [Canrow, Medallion Servicing] and/or any other person or entity with an interest in the Property, must provide statutory notice of any foreclosure to [AquaLegacy]."

Judgment was entered in favor of Canrow, Medallion Servicing, and Ruby Falls and against AquaLegacy on the remaining causes of action, including the cause of action for slander of title. The judgment further provides that cross-complainants Canrow and Medallion Servicing are entitled to take nothing under their cross-complaint.

Canrow, Medallion Servicing, and Ruby Falls seek reversal of the judgment in two related appeals. In H049160, *AquaLegacy v. Canrow* and H048978, *Ruby Falls v. AquaLegacy*, appellants argue that (1) Canrow's foreclosure was not wrongful because AquaLegacy was not entitled to statutory notice of the foreclosure sale under section

---

[1] All subsequent undesignated statutory references are to the Civil Code.

3

2924b; (2) the Canrow trustee's deed is not void on its face due to the mistake in identifying Medallion Silver as the trustee and reformation of the deed of trust should be granted to identify Medallion Servicing as the correct trustee; and (3) the judgment improperly stays foreclosure proceedings for 150 days after the judgment is final. For the reasons stated below, we agree with Canrow and Ruby Falls that AquaLegacy was not entitled to notice of the foreclosure sale under section 2924b, the foreclosure was not wrongful, and the Canrow trustee's deed may be reformed to identify Medallion Servicing as the correct trustee. We will therefore reverse the judgment in H048978 and H049160. In H049160, we will remand the matter for the limited purpose of allowing Canrow to obtain an order for reformation of the trustee's deed recorded November 19, 2014, to correct the error identifying Medallion Silver, LLC as the trustee.

In the third related appeal, H049062, *AquaLegacy v. Canrow*, AquaLegacy contends that the trial court erred in finding in favor of defendants Canrow and Ruby Falls and against AquaLegacy on the cause of action for slander in the third amended complaint. For the reasons stated below, we conclude that the trial court did not err and we will affirm the judgment in H049062.

In the fourth related appeal, H049368, *AquaLegacy v. Canrow*, Canrow contends that the trial court erred in granting AquaLegacy's postjudgment motion for attorney fees and awarding AquaLegacy $1,189,746 in attorney fees.[2] As we will further discuss, having concluded in the related appeals, H049160 and H049062, that AquaLegacy did not prevail on any cause of action, we determine that the trial court erred in awarding attorneys fees and we will reverse the order granting AquaLegacy's motion for attorney fees in H049368.

---

[2] On the court's own motion, we ordered case Nos. H048978, H049062, H049160, and H049368 to be considered together for purposes of oral argument and disposition.

4

## II. Factual And Procedural Background

### A. *The Pleadings*

At the time of the court trial, the operative pleading was plaintiff AquaLegacy's second amended complaint. The named defendants included Canrow, Medallion Servicing, Carl B. Miller dba Geneva Real Estate Investments, Medallion Silver LLC, Ruby Falls, and numerous other individuals and entities that are not parties to the present appeal. AquaLegacy alleged that it was the title owner of certain real property in Monterey, California in which defendants claimed adverse ownership interests.

AquaLegacy also alleged the following facts regarding the ownership of the subject property and its encumbrances. After Cannery Row Marketplace, LLC (Cannery Row Marketplace) acquired the property in 1999 it obtained a loan in the amount of $4.6 million from Carl B. Miller dba Geneva Real Estate Investments by executing a promissory note (the Geneva Note) that was secured by a first deed of trust (the Geneva Deed of Trust) on the property. The amount of the Geneva Note was later increased to $5.975 million, which was secured by a 2006 amended deed of trust. According to AquaLegacy, Miller sold and assigned fractionalized interests in the Geneva Note and Geneva Deed of Trust to numerous investors in a total amount that conveyed more than a 120 percent interest.

In 2009 Miller assigned the servicing agreement for the Geneva loan to defendants Robert Feole and James Kroetch dba Medallion Servicing. In 2012 Medallion Servicing, as trustee and purported agent for the investors in the Geneva Note, recorded a notice of default and election to sell the property. Also in 2012, defendant Canrow was allegedly formed for the stated purpose of acquiring the interests of all of the investors in the Geneva Note and the Geneva Deed of Trust and becoming the sole beneficiary.

The holder of the second deed of trust on the property conducted a foreclosure sale in 2013, at which AquaLegacy was the successful bidder and thereby acquired title to the

property, subject to the Geneva Note and the Geneva Deed of Trust. AquaLegacy later recorded a grant deed.

On August 15, 2013, Medallion Servicing, as substituted trustee, recorded a notice of trustee's sale of the property under the Geneva Deed of Trust. Medallion Servicing and AquaLegacy then entered into an agreement providing that AquaLegacy would pay the outstanding property taxes on the property in exchange for a continuance of the trustee's sale to a date no earlier than December 2013.

In November and December 2013 two title companies informed AquaLegacy that they would not issue a title policy that would insure a payoff of the Geneva Deed of Trust due to irregularities in the chain of title for the Geneva Note. AquaLegacy sought documentation from Medallion Servicing and Canrow that would allow AquaLegacy to assure potential lenders and investors that payment to the beneficiaries of the Geneva Deed of Trust would provide clear title to the property, but no title documentation was provided.

AquaLegacy then filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in order to "to protect the Property pending the resolution of the Property's title issues." During bankruptcy proceedings, AquaLegacy, Medallion Servicing, and Canrow entered into a stipulation whereby Canrow would provide chain of title documentation supporting its claim to a 100 percent interest in the Geneva Note and the Geneva Deed of Trust, and AquaLegacy would pay the $7.5 million payoff amount by September 1, 2014, or, for an additional payment of $50,000, the payoff date would be extended to September 30, 2014. AquaLegacy paid the additional $50,000 for the extension and also made the parking revenue from the property available to Canrow while the bankruptcy was pending.

Medallion Servicing as trustee recorded a notice of trustee's sale on October 30, 2014, less than 20 days before the sale date of November 19, 2014. AquaLegacy did not receive notice of the trustee's sale. The foreclosure sale was held by Medallion Silver,

6

LLC (Medallion Silver) as trustee, although Medallion Servicing had been previously substituted as trustee. The trustee's deed recorded on November 30, 2014 after the foreclosure sale shows that Canrow purchased the property with a credit bid of $2,499,999. In 2015 the bankruptcy proceedings were dismissed. In 2017 Canrow purportedly sold the property to Ruby Falls, which recorded a grant deed.

Based on these and other allegations, AquaLegacy asserted causes of action for (1) quiet title; (2) declaratory relief (rights and obligations under the Geneva Deed of Trust); (3) declaratory relief (set aside wrongful foreclosure); (4) slander of title (against defendant Canrow); (5) fraud in the inducement; (6) violation of Business and Professions Code section 17200; and (7) injunctive and equitable relief. AquaLegacy sought a judgment providing that AquaLegacy is the sole owner of the property and cancelling the void Canrow trustee's deed and the void Ruby Falls grant deed.

Following the court trial, the trial court allowed AquaLegacy to file a third amended complaint to conform to proof. The third amended complaint included additional factual allegations and sought a judgment providing that AquaLegacy "is the sole and exclusive owner in fee simple of the Property and that Defendants have no interest in the Property adverse to Plaintiff, except for the rights, if any, that Canrow and/or one or more Defendants may retain in the fractionalized interests of the Geneva Note and Geneva Deed of Trust."

Canrow and Medallion Servicing filed a cross-complaint that included a cause of action for reformation of the trustee's deed that Canrow had recorded on November 19, 2014, following the trustee's sale of the property to Canrow on November 14, 2014. Cross-complainants asserted that the Canrow trustee's deed mistakenly identified the trustee and requested reformation of the deed of trust to identify the correct trustee.

**B. *The Court Trial***

Our brief summary of the evidence admitted at the court trial focuses on the background and facts pertinent to the issues on appeal. The property at issue consists of

7

four acres of waterfront property on Cannery Row in Monterey that is undeveloped except for a parking lot and a historic building. Phillip Taylor, a real estate developer, bought the property in 1996 through the entity Cannery Row Marketplace.

In 1999 Cannery Row Marketplace received a loan from Carl B. Miller dba Geneva Real Estate Investments in the amount of $4.6 million, as recited in a promissory note (the Geneva Note) and secured by a first deed of trust (the Geneva Deed of Trust) on the property. Taylor understood that the funds for the loan came from a number of individual investors, not Miller. Taylor used the funds to secure various development entitlements for the property. The amount of the loan was later increased to $5,975,000, as indicated in the 2006 amendment to the Geneva Deed of Trust.

In 2009 Miller transferred the servicing agreements for the Geneva Note to Kroetch and Feole. Miller's assistant Brenda Voelker, who also worked for Kroetch and Feole, was unable to locate the original servicing agreements between Miller and the investors in the Geneva Note. Miller had left and taken all of the lender files and the office computer.

Cannery Row Marketplace defaulted on the Geneva Note in 2009 or 2010. In 2012, Kroetch and Feole formed Canrow to consolidate the investors' interests in the Geneva Note, and asked the investors in the Geneva Note to exchange their interests in the Geneva Note for membership in Canrow. Kroetch believed that all of the investors in the Geneva Note became members of Canrow. Medallion Servicing was the managing member of Canrow, and Kroetch was the managing member of Medallion Servicing and the principal representative of Canrow. In December 2012 Canrow, through trustee Medallion Servicing, recorded a notice of default under the Geneva Note and Geneva Deed of Trust.

The property was also subject to a second deed of trust. Michael J. Brown formed AquaLegacy for the purpose of purchasing the property at the foreclosure sale held on the second deed of trust in 2013. Brown was aware that the property was subject to a first

deed of trust, the Geneva Deed of Trust, and that approximately $6 million was due on the Geneva Note. AquaLegacy was the successful bidder at the foreclosure sale and recorded a trustee's deed upon sale on the property in December 2013. After the foreclosure sale on the second deed of trust, Cannery Row Marketplace no longer had any interest in the property.

Brown authorized Taylor to represent AquaLegacy in connection with the property. AquaLegacy's plan was to obtain a joint venture partner or sell the property so that Brown could receive a return on his investment. Taylor knew the Geneva Note was in default. However, AquaLegacy did not have sufficient capital to pay the amount due on the Geneva Note. Brown entered into an agreement with Kroetch, as the representative of Canrow, to extend the Geneva Note's maturity date in exchange for AquaLegacy paying the property taxes that were owed on the property. After paying the outstanding property taxes, Brown began to look for lenders who would refinance the Geneva Note. Brown understood that Kroetch wanted Brown to originate a new loan with him, but Brown did not like the terms.

Taylor assisted AquaLegacy in its attempt to obtain refinancing of the Geneva Note. He approached two title companies, First American Title and Old Republic, in an effort to obtain title insurance for the refinance transaction. Both companies refused to issue a policy of title insurance because it appeared that Carl Miller had sold more than a 100 percent interest in the Geneva Note to investors.

Michael Hickey, a senior national underwriter for First American Title, testified that he had reviewed the preliminary title report for the property that was produced by First American Title in 2013. Hickey also reviewed the assignment chain for the Geneva Deed of Trust and determined that there were over 50 assignments of beneficiary interests. He was not able to determine from recorded documents who held the beneficiary interests, and it appeared that more than the value of the Geneva Deed of Trust had been assigned. First American Title's preliminary title report indicated that

9

title insurance could not be issued unless the problems with the assignment chain were rectified. Kroetch disagreed that there was a problem with the title to the property or that more than a 100 percent interest in the Geneva Note had been assigned. Voelker testified that the software program she used to make payments to investors who had fractionalized interests in the Geneva Note showed that the loan was 100 percent assigned.

After Kroetch refused to cooperate with the quiet title action proposed by AquaLegacy to resolve the title issues, AquaLegacy retained bankruptcy counsel, Paul Manasian, who filed a petition in the United States Bankruptcy Court for the purpose of staying foreclosure proceedings on the property. Manasian also hoped that the title issues could be resolved in the bankruptcy proceedings through a bankruptcy discovery order. However, Manasian never received documents from Kroetch or his attorney that would clear up the title confusion by showing the chain of title.

During the bankruptcy proceedings, the parties entered into a cash collateral stipulation that provided a 30-day extension of time to resolve the title issues in exchange for AquaLegacy's payment of $50,000. The stipulation also provided for a payoff of the Geneva Note in the amount of $7,150,000 by September 30, 2014, if AquaLegacy paid for the extension. Although AquaLegacy paid $50,000 for the extension, it did not make the payoff by September 30, 2014. Manasian continued to negotiate with Kroetch's attorney to resolve the debt and title issues in bankruptcy court, including negotiation of a revised stipulation that included a new loan from Medallion Servicing.

While these negotiations were ongoing, Kroetch demanded that AquaLegacy pay an additional $50,000 or Canrow would begin foreclosure proceedings on the Geneva Deed of Trust. The parties did not have an agreement that Kroetch would not foreclose. AquaLegacy paid $50,000 directly to Kroetch's personal account, as requested, in order to continue negotiations. The terms of the revised stipulation that the parties were negotiating in bankruptcy court included a payment of $103,000 by AquaLegacy to Kroetch's personal account. AquaLegacy made the payment and by mid-October 2014

10

the parties were continuing to negotiate. At that point, Medallion Servicing demanded payment of $1 million as a down payment on a new loan. AquaLegacy requested that Canrow provide a title affidavit that would enable AquaLegacy to obtain title insurance and also show the bankruptcy court that every potential fractional owner of the Geneva Note had received notice.

AquaLegacy did not receive the title affidavit that it had requested from Canrow and the parties did not agree to a revised stipulation or a new loan. Negotiations were continuing in December 2014 when Manasian learned that Kroetch had conducted a foreclosure sale on the property and AquaLegacy apparently no longer owned the property. Kroetch's attorney was not aware that the foreclosure sale had taken place until he was informed of the sale by Manasian.

Kroetch acknowledged that he did not tell his own attorney or a representative of AquaLegacy that he had signed a notice of trustee's sale for the property on October 16, 2014, and recorded the notice of trustee's sale on October 30, 2014. He sent the notice of the trustee's sale to an outdated address for Taylor and did not send a notice of trustee's sale to Brown or any other representative of AquaLegacy.[3] Consequently, AquaLegacy did not receive notice of the foreclosure sale that was held on November 14, 2014. Kroetch knew that the foreclosure sale by Canrow on the Geneva Deed of Trust would wipe out AquaLegacy's interest in the property.

The foreclosure sale held on November 14, 2014, was witnessed by Joseph Cusenza, who had learned of the pending foreclosure sale and saw the notice of the foreclosure sale posted at the Castroville Library. After confirming that the foreclosure sale would be held, Cusenza attended the sale that Kroetch conducted at the Castroville Library on November 14, 2014. He observed Kroetch read the notice of trustee's sale

---

[3] No issue has been raised on appeal regarding the adequacy of the notice of trustee's sale that Kroetch sent to an outdated address for Taylor.

11

and accept the only bid, which was a credit bid from Medallion Servicing on behalf of Canrow.

After the foreclosure sale to Canrow, the trustee's deed for the property was recorded on November 19, 2014. The trustee's deed signed by Kroetch identified Medallion Silver as substituted trustee under the deed of trust. Medallion Silver was another entity managed by Kroetch. Kroetch confirmed that Medallion Servicing, not Medallion Silver, was identified as the trustee on the Geneva Deed of Trust at the time of the foreclosure sale. Both he and Voelker testified that it was simply a mistake that Medallion Silver was identified as the trustee on the trustee's deed. In 2017, Canrow sold the property to Ruby Falls, which recorded a grant deed.

### C. *Statement of Decision*

Following the court trial, the trial court issued a January 7, 2021 order after trial, which the court later clarified in a minute order was the court's final statement of decision. The trial court ruled in the statement of decision that Canrow's foreclosure was wrongful and ordered that the foreclosure be set aside. The trial court also granted quiet title in AquaLegacy as to all defendants, including Canrow, Ruby Falls, and Medallion Servicing. However, the trial court also ordered that foreclosure could proceed 30 days after the decision became final (later extended to 150 days in the judgment), upon statutory notice of the foreclosure sale to AquaLegacy.

The trial court's rulings were based on the following findings regarding the elements of the wrongful foreclosure cause of action. First, the trial court found that Canrow's foreclosure was willful and oppressive because (1) AquaLegacy was entitled to notice of the foreclosure sale under section 2924 et seq. and *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 320-322 (*Whitman*), as well as the Geneva loan documents; (2) Kroetch knew that AquaLegacy's interest in the property would be eliminated by the foreclosure sale and, after a year of negotiations, chose not to give AquaLegacy notice of the foreclosure sale as required under section 2924; (3) During the

12

parties' negotiations, AquaLegacy paid for an extension to postpone the foreclosure sale each time Canrow threatened to foreclose; (4) Canrow and Medallion Servicing, through Kroetch, knew that title insurance would be difficult to obtain and took advantage of their superior knowledge; (5) Canrow, through Kroetch, repeatedly lied about having consolidated the fractional interests in the Geneva loan and asserted no documentation of the fractional interests was needed; (6) Kroetch had a financial interest in stopping AquaLegacy from obtaining title insurance because he wanted to sell AquaLegacy a "hard money loan" at a high interest rate; and (7) the parties' attorneys continued to negotiate in good faith and had nearly reached an agreement.

Second, the trial court found that AquaLegacy was prejudiced by defendants' failure to give notice that negotiations had ended and the foreclosure process would begin. The court also found that AquaLegacy was prejudiced by their failure to give statutory notice of the foreclosure sale, since on previous occasions when foreclosure was threatened AquaLegacy had been able to extend the time for payment and seek financing.

Third, the trial court ruled that AquaLegacy was excused from tendering the amount due on the Geneva loan because imposing a tender requirement in this case would be inequitable.

With regard to the cross-complaint filed by Canrow and Medallion Servicing, the trial court denied their request for reformation of the Canrow trustee's deed of sale to identify Medallion Servicing as the trustee.

Lastly, the trial court found that Kroetch and Voelker were not credible witnesses because their testimony was evasive and non-responsive.

The parties filed objections to the statement of decision. Canrow and Medallion Servicing asserted that several rulings in the statement of decision were ambiguous and requested revision of the statement of decision to clarify the ambiguities. Ruby Fall's objections noted that the statement of decision omitted any findings as to the causes of action for declaratory relief, slander of title, violation of Business and Professions Code

13

section 17200, and injunctive relief. Ruby Falls also asserted that the statement of decision lacked a number of factual findings in support of the trial court's conclusions. The trial court overruled all of the objections to the statement of decision.

**D.** *Judgment*

The judgment entered on March 4, 2021, provides as follows regarding the causes of action in the third amended complaint. Judgment was entered in favor of plaintiff AquaLegacy and against defendants Canrow, Medallion Servicing, and Ruby Falls on the first cause of action for quiet title, the second cause of declaratory relief, and the third cause of action for declaratory relief to set aside wrongful foreclosure.

Judgment was entered in favor of defendants Canrow and Medallion Servicing and against plaintiff AquaLegacy on the fourth cause of action for slander of title, the fifth cause of action for fraud, the sixth cause of action for violation of Business and Professions Code section 17200, and the seventh cause of action for equitable and injunctive relief.

Judgment was entered in favor of defendant Ruby Falls and against plaintiff AquaLegacy on the fourth cause of action for slander of title, the sixth cause of action for violation of Business and Professions Code section 17200, and the seventh cause of action for equitable and injunctive relief. The judgment notes that summary adjudication in favor of defendant Ruby Falls on the cause of action for fraud in the second amended complaint was previously granted.

Regarding wrongful foreclosure and the title to the property, the judgment expressly provides that (1) "The foreclosure sale purportedly conducted by Canrow on November 14, 2014, based on the Notice of Default dated November 27, 2012, and recorded in the Official Records of the Monterey County Recorder on December 10, 2012 as Instrument No. 2012075943 (the 'Notice of Default'), was wrongful and is hereby set aside"; (2) "The Trustee's Deed dated November 19, 2014, and recorded in the official records of the Monterey County Recorder on November 19, 2014 as Instrument

14

No. 2014058068, is void and is hereby set aside"; (3) As of April 11, 2016, title is quieted in AquaLegacy as against any adverse claims to the property by Canrow, Medallion Servicing, and Ruby Falls, provided the property remains encumbered by the deed of trust, security agreement, and assignment of rents dated and recorded July 30, 1999 (the Geneva Deed of Trust) and AquaLegacy's title is subject to the Geneva Deed of Trust; (4) "Until 150 days after the judgment becomes final for all purposes and is non-appealable, [Canrow, Medallion Servicing, and/or Ruby Falls] may not proceed with foreclosure pursuant to the notice of default which the court has set aside in this litigation. At such time as [Canrow, Medallion Servicing, and/or Ruby Falls] do proceed, they shall do so as provided by law;" and (5) "All defendants, including [Canrow, Medallion Servicing] and/or any other person or entity with an interest in the Property, must provide statutory notice of any foreclosure to [AquaLegacy]."

As to the cross-complaint, judgment was entered in favor of cross-defendant AquaLegacy and provides that cross-complainants Canrow and Medallion Servicing are entitled to take nothing under their cross-complaint.

Finally, the judgment provides that pursuant to Code of Civil Procedure section 1032, AquaLegacy is deemed the prevailing party for purposes of recoverable costs, that any apportionment shall be decided by the court, and any party may move for attorney fees pursuant to section 1717.

## III. DISCUSSION

### A. H049160, *AquaLegacy v. Canrow* and H048978, *Ruby Falls v. AquaLegacy*

Canrow and Ruby Falls argue similar claims of trial court error in their appeals (H049160 and H048978): (1) Canrow's foreclosure was not wrongful because AquaLegacy was not entitled to statutory notice of the foreclosure sale under section 2924b; alternatively, AquaLegacy failed to show it was prejudiced by any irregularity in the foreclosure sale and was not excused from tendering the amount due on the Geneva Note ; (2) the Canrow trustee's deed is not void on its face due to the mistake in

15

identifying Medallion Silver as the trustee and reformation of the deed of trust should be granted to identify Medallion Servicing as the correct trustee; and (3) the judgment improperly stays foreclosure proceedings for 150 days after the judgment is final.

We begin our evaluation of the issues on appeal with the standard of review that applies where, as here, the judgment is based upon a statement of decision following a court trial.

## 1. Standard of Review

On appeal, the general rule is that " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

More specifically, " 'in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' [Citation.] The appellant has the burden of demonstrating that 'there is no substantial evidence to support the challenged findings.' [Citation.]" (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1264 (*Manson*).)

## 2. Elements of a Wrongful Foreclosure Cause of Action

We first consider the threshold issue pertaining to wrongful foreclosure that is raised in both appeals: Whether the trial court erred in ruling that Canrow's foreclosure sale of the property was wrongful because AquaLegacy did not receive the statutory

notice of the foreclosure sale that is required under section 2924b. Our review begins with the elements of the cause of action for wrongful foreclosure.

"After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale. [Citation.] Generally, a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored. [Citations.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103 (*Lona*).)

" ' "It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." ' [Citations.]" (*Lona*, *supra*, 202 Cal.App.4th at p. 103.)

Accordingly, the elements of a cause of action for wrongful foreclosure are "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. [Citations.]" (*Lona*, *supra*, 202 Cal.App.4th at p. 104.)

### 3. Statutory Notice Requirements

The first element of the cause of action for wrongful foreclosure may be satisfied by "the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale. [Citations.]" (*Lona*, *supra*, 202 Cal.App.4th at p. 104.)

The statutory requirements for notice of a nonjudicial foreclosure sale are set forth in section 2924b, which requires the trustee, among other things, to send notice of the foreclosure sale to the trustor and each person who has recorded a request for notice, as

follows: "The mortgagee, trustee, or other person authorized to record the notice of default or the notice of sale shall do each of the following: [¶] . . . [¶] At least 20 days before the date of sale, deposit or cause to be deposited in the United States mail an envelope, . . . containing a copy of the notice of the time and place of sale, addressed to each person whose name and address are set forth in a duly recorded request therefor, directed to the address designated in the request and to each trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust or mortgage with power of sale." (§ 2924b, subd. (b)(2).)

The procedure for requesting notice of default and notice of a nonjudicial foreclosure sale is provided by section 2924b, subdivision (a): "Any person desiring a copy of any notice of default and of any notice of sale under any deed of trust or mortgage with power of sale upon real property . . . as to which deed of trust or mortgage the power of sale cannot be exercised until these notices are given for the time and in the manner provided in Section 2924 may, at any time subsequent to recordation of the deed of trust or mortgage and prior to recordation of notice of default thereunder, cause to be filed for record in the office of the recorder of any county in which any part or parcel of the real property is situated, a duly acknowledged request for a copy of the notice of default and of sale."

Additionally, section 2924b, subdivision (c)(2) provides that the successor in interest "of the estate or interest or any portion thereof of the trustor or mortgagor of the deed of trust or mortgage being foreclosed" is also entitled to notice of the foreclosure sale mailed at least 20 days before the date of sale pursuant to section 2024b, subdivisions (c)(2)(A), (c)(3). However, the successor in interest is entitled to notice of the default and notice of the foreclosure sale only if the interest was acquired "by an instrument sufficient to impart constructive notice of the . . . interest in the land . . . and provided the instrument is recorded in the office of the county recorder so as to impart

18

that constructive notice prior to the recording date of the notice of default . . . ." (§ 2924b, subds. (c)(1), (c)(2)(A).)

### 4. Analysis

In the present case, the trial court ruled that Canrow's foreclosure on the subject property was wrongful because Canrow and Medallion Servicing failed to give AquaLegacy notice of the foreclosure sale as required by section 2924b.

Canrow and Ruby Falls argue that the trial court erred because AquaLegacy was not entitled to notice under section 2924b, for several reasons. According to Canrow and Ruby Falls, AquaLegacy was not entitled to notice because it was not a trustor under the Geneva Deed of Trust as provided by section 2924b, subdivision (b), or a successor in interest under section 2924b, subdivision (c), and because AquaLegacy had not recorded a request for notice under section 2924b, subdivision (b)(2). Further, they contend that there is no implied duty to provide notice of a foreclosure sale, emphasizing that the California Supreme Court has ruled that "[t]he rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes. [Citations.]" (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287 (*I.E. Associates*).)

AquaLegacy responds that the trial court did not err in ruling that the foreclosure was wrongful because the decision in *Whitman, supra,* 165 Cal.App.3d 312, provides that where, as here, the owner of the property takes title subject to a deed of trust, the owner is the trustor for purposes of the nonjudicial foreclosure statutes. Since AquaLegacy acquired the property subject to the Geneva Deed of Trust, AquaLegacy maintains that it was entitled to notice of the foreclosure sale as a trustor under section 2924b, subdivision (b)(2). AquaLegacy does not dispute the contentions of Canrow and Ruby Falls that it did not record a request for notice under section 2924b, subdivision (b)(2) and was not entitled to notice as a successor in interest under section 2924b, subdivision (c)(2).

19

We apply the independent standard of review to the legal question of whether AquaLegacy was entitled to notice as a trustor under section 2924b, applying well-established rules of statutory interpretation.  (See *Burden v. Snowden* (1992) 2 Cal.4th 556.)  "[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.  [Citation.]  We begin with the language of the statute, giving the words their usual and ordinary meaning.  [Citation.]  The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]"  (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

The pertinent statute is section 2924b, subdivision (b)(2), which provides in part: "The mortgagee, trustee, or other person authorized to record . . . the notice of sale shall do each of the following:  [¶] . . . [¶] At least 20 days before the date of sale, deposit or cause to be deposited in the United States mail an envelope, . . . containing a copy of the notice of the time and place of sale . . ., directed to . . . each trustor[.]"  The statutory scheme for nonjudicial foreclosure (§§ 2920-2923, 2924 et seq.) does not include a definition of "trustor."

However, the California Supreme Court has stated that "[a] deed of trust to real property acting as security for a loan typically has three parties:  the trustor (borrower), the beneficiary (lender), and the trustee.  'The trustee holds a power of sale.  If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.'  [Citation.]"  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926 (*Yvanova*).)  The *Yvanova* court also noted the Legislature's intent in enacting the statutory scheme for nonjudicial foreclosure:  "The nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.  [Citation.]"  (*Id.* at p. 926.)

20

We determine that AquaLegacy is not a trustor for purposes of the notice requirement provided by section 2924b, subdivision (b)(2) because AquaLegacy was not the borrower under the Geneva Deed of Trust. According to the trial evidence, Cannery Row Marketplace was the borrower and consequently Cannery Row Marketplace was the trustor under the Geneva Deed of Trust. (See *Yvanova*, *supra,* 62 Cal.4th at p. 926.) Therefore, AquaLegacy was not the trustor under the Geneva Deed of Trust and was not entitled to receive notice of the October 2014 foreclosure sale as the trustor under section 2924b, subdivision (b)(2).

Additionally, it is undisputed that AquaLegacy was not entitled to receive notice pursuant to the additional notice provisions of section 2924b. AquaLegacy did not, and could not, record a request for notice under either section 2924b, subdivision (b)(2) as an interested person or under section 2924b, subdivision (c) as a successor in interest, since AquaLegacy recorded a trustee's deed upon sale in July 2013 after the notice of default was recorded in December 2012. In sum, AquaLegacy failed to establish that it was entitled to notice of Canrow's foreclosure sale under any of the statutory notice provisions of section 2924b.

We recognize that the statutory scheme for nonjudicial foreclosure does not expressly address the circumstances of this case, where (1) the current owner of the property is not the trustor under a first deed of trust in default that encumbers the property and subjects the owner to a potential foreclosure; (2) the current owner is not entitled to record a request for notice of the foreclosure sale and receive notice as provided by section 2924b because the current owner recorded a notice of trustee's deed upon sale after the notice of default on the first deed of trust was recorded; and (3) the current owner is known to the trustee under the first deed of trust who noticed the foreclosure sale. However, the California Supreme Court's rulings in *I.E. Associates, supra*, 39 Cal.3d 281 make clear that a trustee's duties under the statutory scheme for nonjudicial

foreclosure, including the notice requirements, must be strictly construed and may not be expanded by judicial decision.

As Canrow and Ruby Falls have pointed out, in *I.E. Associates*, *supra*, 39 Cal.3d 281, our Supreme Court stated that "[t]he rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes." (*Id*. at p. 287.) Further, the court stated: "[T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes. There are, moreover, persuasive policy reasons which militate against a judicial expansion of those duties. The nonjudicial foreclosure statutes—an alternative to judicial foreclosure—reflect a carefully crafted balancing of the interests of beneficiaries, trustors, and trustees. Beneficiaries, of course, want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors, on the other hand, need protection against the forfeiture of valuable property rights. Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors. [Citations.]" (*Id*. at p. 288; see also *Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1103 ["trustee's duties should not be expanded by judicial decisions, and the duties are limited to those established by the Legislature"].)

We acknowledge the result in this case is concerning, in that Canrow conducted the foreclosure sale without informing AquaLegacy even as the parties' attorneys were actively engaged in negotiating a resolution of the matter. But pursuant to our Supreme Court's instruction we may not impose an additional duty on Canrow, as the trustee, to provide notice of the foreclosure sale to AquaLegacy to which AquaLegacy was not expressly entitled under section 2924b. (See *I.E. Associates*, *supra*, 39 Cal.3d at p. 287.)

22

The decisions in *Whitman, supra*, 165 Cal.App.3d 312 and *Estate of Yates* (1994) 25 Cal.App.4th 511 (*Yates*), on which AquaLegacy relies for a contrary conclusion, are both distinguishable.

The decision in *Whitman* involved a different provision of the statutory scheme for nonjudicial foreclosure, former section 2924g, subdivision (c)(1). (*Whitman*, *supra*, 165 Cal.App.3d at p. 315.) In that case, the subject property was purchased at a foreclosure sale under the third deed of trust by Alvin Lee, who thereby became the owner of the property. (*Ibid.*) The issue before the appellate court was whether Lee could be considered a trustor entitled to a one-day postponement of the trustee's sale under a prior deed of trust pursuant to former section 2924g, subdivision (c)(1). (*Whitman*, at p. 317.) The court concluded that "the term 'trustor' as used in [former] section 2924g includes the successor in interest to the original trustor who owns the property to be sold at the scheduled trustee's sale." (*Id.* at p. 322.) Thus, the decision in *Whitman* did not address the notice requirements of section 2924b. Moreover, even if AquaLegacy is considered a successor in interest to Cannery Row Marketplace as the trustor under the Geneva Deed of Trust, as we have discussed, AquaLegacy was not entitled to notice of the foreclosure sale as a successor interest under section 2924b, subdivision (c)(2).

The decision in *Yates* involved a foreclosure sale held in the absence of the trustor, who had died while the property the trustor owned was encumbered by first, second, and third deeds of trust. (*Yates*, *supra*, 25 Cal.App.4th at p. 515.) The public administrator appointed by the probate court was unaware of the third deed of trust and did not receive notice that the third deed of trust was in default. (*Id.* at p. 517.) After the public administrator learned that the property had been sold at a trustee's sale under the third deed of trust, the public administrator brought an action to set aside the sale on the ground that the trustee had failed to comply with the statutory notice provisions of section 2924b. (*Ibid.*) The probate court ordered that title to the property be transferred to the public administrator. (*Ibid.*)

On appeal in *Yates*, the party that bought the property at the foreclosure sale under the third deed of trust contended that the probate court had erred in finding that the trustee failed to provide proper notice of the default and foreclosure sale because section 2924b, subdivisions (b) and (c) did not specify that notice be sent to the administrator of an estate. (*Yates, supra*, 25 Cal.App.4th at p. 520.) The appellate court determined that issue was "whether a trustee who has actual knowledge that a trustor has died and has actual knowledge that the deceased's estate is being administered by the public administrator is obligated to send a notice of default to the public administrator." (*Id.* at p. 521, italics omitted.) The court concluded that "a trustee is obligated to send a notice to the executor under such circumstances. During probate, an estate takes over the responsibilities and obligations of the deceased with respect to property ownership. Thus, the executor of the estate essentially becomes the trustor, pending final distribution of the estate." (*Id.* at p. 521.) The decision in *Yates* does not aid AquaLegacy because the decision involved the factually distinguishable issue of whether a public administrator responsible for the property owned by a deceased trustor is entitled to notice of a foreclosure sale under section 2924b.

Finally, we are not persuaded by AquaLegacy's contention that it had a contractual right to notice of the foreclosure sale, based on the terms of the Geneva Deed of Trust and the trial court's finding that "[b]ased on the action and history of the parties, AquaLegacy was entitled to notice that the negotiations had ended, and the foreclosure would proceed." We have determined that AquaLegacy is not the trustor under the Geneva Deed of Trust, and therefore any notice provisions in the Geneva Deed of Trust do not apply to AquaLegacy. Moreover, as Ruby Falls notes, there was no trial evidence to support a finding that AquaLegacy and Canrow had an express agreement that Canrow would give notice of the foreclosure sale to AquaLegacy.

We are also not persuaded by AquaLegacy's conclusory assertion that, independent of the failure to give notice, the foreclosure was wrongful because it was

24

willful and oppressive due to Canrow's pattern of misconduct. AquaLegacy does not support its assertion with any evidence of willful and oppressive conduct, other than the failure to give notice, in the foreclosure process itself. Given our determination that Canrow had no obligation to give notice of the foreclosure sale under section 2924b, Canrow's failure to give notice cannot constitute evidence of a willful and oppressive foreclosure sale. (See *Lona*, *supra*, 202 Cal.App.4th at p. 104.)

We therefore conclude that the trial court erred in ruling that Canrow's foreclosure sale of the property was wrongful and entering judgment in favor of AquaLegacy and against defendants Canrow, Medallion Servicing, and Ruby Falls on the first cause of action for quiet title, the second cause of declaratory relief, and the third cause of action for declaratory relief to set aside wrongful foreclosure.

Having reached these conclusions, we need not address the parties' contentions regarding the second element of prejudice and the third element of the tender requirement of a wrongful foreclosure action. We also need not address the issues of whether the trial court improperly stayed foreclosure proceedings for 150 days or whether Canrow recorded the notice of trustee's sale less than 20 days before the sale in violation of section 2924f, subdivision (b)(4).

**B.** *Cross-Complaint—Reformation of Canrow's Trustee's Deed*

On appeal, Canrow argues that the trial court erred in declining to order reformation of the November 19, 2014 trustee's deed of sale that Canrow recorded after the foreclosure sale to correct the error identifying Medallion Silver, instead of Medallion Servicing, the recorded trustee, as the trustee. Canrow contends that the trial court improperly found that reformation of the trustee's deed would be inequitable.

**1. Background**

Canrow, Medallion Servicing, and Medallion Silver filed a cross-complaint that included a cause of action for reformation of the trustee's deed of sale that Canrow had recorded on November 19, 2014, following the trustee's sale of the property to Canrow

on November 14, 2014. Cross-complainants asserted that the Canrow trustee's deed mistakenly identified the trustee as Medallion Silver and requested reformation of the trustee's deed to identify the recorded trustee, Medallion Servicing.[4]

At trial, Kroetch testified that he conducted the trustee's sale on November 14, 2014. Kroetch also testified that he was the managing member of Medallion Servicing, the trustee under the Geneva Deed of Trust at the time of the sale, as well as the principal representative of Canrow, the beneficiary. Kroetch was also the manager of another entity, Medallion Silver. Kroetch acknowledged in his trial testimony that Medallion Silver was not the recorded trustee under the Geneva Deed of Trust at the time of the sale. Volker, Kroetch's assistant, testified that identifying Medallion Silver as the trustee on the trustee's deed of sale was a clerical error.

In the statement of decision, the trial court denied the request of Canrow and Medallion Servicing for reformation of the Canrow trustee's deed to identify Medallion Servicing as the trustee. The judgment entered in favor of cross-defendant AquaLegacy provides that cross-complainants Canrow and Medallion Servicing are entitled to take nothing under their cross-complaint.

### 2. Reformation of an Instrument

Reformation of a contract, including an instrument such as a deed, is governed by section 3399, which provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done

---

[4] The cross-complaint includes the following prayer for relief: "For confirmation of the reformation of the Trustee's Deed recorded November 19, 2014, as Document 2014058068 Official Records, Monterey County, California to reflect the true occurrences and intent of the parties all as related to the Trustee's Sale of the Cannery Row Property effective November 14, 2014, and as evidenced by the Amended and Restated Trustee's Deed to be recorded for constructive notice purposes."

without prejudice to rights acquired by third persons, in good faith and for value." (See, e.g., *Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 698 (*Shupe*) [reformation of deeds to grant easement].)

The purpose of reformation under section 3399 "is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing. [Citation.]" (*Lemoge Electric v. County of San Mateo* (1956) 46 Cal. 2d 659, 663.) "Mutual mistake is satisfied by the undisputed evidence that at the time of foreclosure all parties believed that the documents were sufficient to carry out the intent of the parties. [Citation.]" (*Jones v. First American Title Insurance Co.* (2003) 107 Cal.App.4th 381, 389 (*Jones*).)

Further, "[w]here the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved [citation]." (*Shupe*, *supra*, 254 Cal.App.2d at p. 700.) Thus, it is well established that "the mistake of a draftsman is a good ground for the reformation of an instrument which does not truly express the intention of the parties. [Citations.]" (*Mills v. Schulba* (1950) 95 Cal.App.2d 559, 561 (*Mills*) [judgment properly decreed reformation of deed to include lot inadvertently omitted from deed].)

Reformation is an equitable remedy, and the standard of review for the trial court's ruling denying reformation of an instrument is therefore abuse of discretion. (*Jones*, *supra*, 107 Cal.App.4th at pp. 388, 390.)

### 3. Analysis

Canrow contends that the trial court erred in failing to allow reformation of Canrow's trustee's deed to correct the error identifying Medallion Silver as the trustee because it was undisputed that the error was a scrivener's mistake that could not have prejudiced AquaLegacy.

27

AquaLegacy disagrees, arguing that Canrow's trustee's deed is void because Medallion Silver did not have the authority to execute the trustee's deed. Alternatively, AquaLegacy argues that the error in misidentifying Medallion Silver cannot be corrected because the mistake resulted from the lack of reasonable care. Further, AquaLegacy asserts that the trial court properly found that reformation of the trustee's deed would be inequitable due to Canrow's misconduct.

We determine that the trial evidence shows that the error in identifying Medallion Silver as the trustee on Canrow's November 19, 2014 trustee's deed of sale was a mutual mistake that resulted from inadvertence. The mistake was mutual because Kroetch represented both parties to the foreclosure sale, including Medallion Servicing, the recorded trustee, and Canrow, the beneficiary under the Geneva Deed of Trust. Kroetch also conducted the foreclosure sale and testified that identifying Medallion Silver as the trustee on the trustee's deed was a mistake. Kroetch's assistant, Voelker, testified that the mistake was a clerical error. There was no trial evidence to contradict the evidence that the error was a mutual mistake resulting from inadvertence by the parties to the foreclosure sale.

Accordingly, we conclude that pursuant section 3399 the trustee's deed properly may be reformed to correct the inadvertent, mutual mistake by identifying Medallion Servicing as the correct trustee. (See *Shupe*, *supra*, 254 Cal.App.2d at p. 700; *Mills*, *supra*, 95 Cal.App.2d at p. 561.) The trial court therefore abused its discretion in denying reformation of the trustee's deed. (See *Jones*, *supra*, 107 Cal.App.4th at pp. 388, 390.)

The decisions on which AquaLegacy relies are distinguishable and do not cause us to alter our conclusion. In *Fraters Glass & Paint Co. v. Southwestern Construction Co.* (1930) 107 Cal.App. 1, 5-6 (*Fraters*) the appellate court stated that "[c]ourts of equity will not encourage the cancellation or revision of instruments on the ground of mistake where they appear to have been executed by the complainant without the exercise of reasonable care. [Citations.]" However, the decision in *Fraters* did not involve a mutual

28

mistake. To the contrary, the appellate court noted that there was no evidence that the alleged mistake in the terms of bond at issue was known or suspected by both parties or that the bond did not express the intention of the parties. (*Id.* at p. 5.)

AquaLegacy also argues that Canrow's "unclean hands are a complete defense" to reformation of the trustee's deed, relying on the decision in *Seymour v. Cariker* (1963) 220 Cal.App.2d 300, 305-306 (*Seymour*). That decision does not aid AquaLegacy because the appellate court only determined that the matter should be remanded for a new trial at which the defense of unclean hands could be raised as a defense to reformation of a deed. (*Ibid.*) Since we have concluded that Canrow did not have a statutory obligation to give notice of the foreclosure sale to AquaLegacy under section 2924b, which we understand to be the basis of AquaLegacy's claim of Canrow's unclean hands, we are not persuaded that reformation of the trustee's deed is barred on grounds of unclean hands.

For these reasons, we will reverse the judgments in H049160, *AquaLegacy v. Canrow* and H048978, *Ruby Falls v. AquaLegacy*. In H049160, *AquaLegacy v. Canrow* we will remand the matter to the trial court for the limited purpose of allowing Canrow, upon appropriate motion or other appropriate procedure, to obtain an order authorizing reformation of the trustee's deed recorded November 19, 2014, to correct the error identifying Medallion Silver, LLC as the trustee.

### C. H049062, *AquaLegacy v. Canrow*

In this appeal, AquaLegacy contends that the trial court erred in finding in favor of defendants Canrow and Ruby Falls and against AquaLegacy on the cause of action for slander of title in the third amended complaint.

The elements of the cause of action for slander of title are well established. "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof ' " some special pecuniary loss or damage." ' [Citation.] The elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary

29

loss. [Citations.] If the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title. [Citation.]" (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030 (*Sumner Hill*).)

Pursuant to section 2924, subdivision (d)(1), the publication of the notices required as part of the nonjudicial foreclosure process is a publication that is protected by the qualified privilege set forth in section 47, subdivision (c)(1). (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 335-336 (*Kachlon*) [construing former section 2924, subdivision (d)].) "The recording of a trustee's deed upon sale is also privileged. Section 2924, subdivision (d)(2) complements and broadens subdivision (d)(1) by providing that '[p]erformance of the procedures set forth in this article' also 'constitute privileged communications pursuant to Section 47.' [Citation.]" (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336 (*Schep*).)

To overcome the qualified privilege, the plaintiff must prove malice. (§ 47, subd. (c)(1).) In this context, "malice is defined as actual malice, meaning ' "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' [Citations.]" (*Kachlon, supra,* 168 Cal.App.4th at p. 336; *Schep*, *supra*, 12 Cal.App.5th at p. 1337.)

AquaLegacy contends that "[t]he findings made by the trial court establish that Canrow acted maliciously when recording the false Trustee's Deed disparaging AquaLegacy's title to the Property. Specifically, the trial court found that Canrow engaged in a 'pattern of willfully oppressive behavior' and 'failed to proceed as required by the foreclosure laws' in connection with the November 14, 2014, foreclosure sale." (Emphasis omitted.)

Canrow responds that AquaLegacy cannot establish a cause of action for slander of title because AquaLegacy was not the owner of the property when Canrow's trustee's

deed was recorded. Alternatively, Canrow points out that the trial court made no factual findings regarding the cause of action for slander of title, and argues that malice cannot be inferred from the evidence showing that the Canrow deed of trust was mistakenly prepared with the erroneous trustee identified.

We determine that on this record, AquaLegacy has not shown that the trial court erred in finding in defendants' favor on the cause of action for slander of title. The judgment states that the trial court finds in favor of defendants Canrow and Medallion Servicing and against plaintiff AquaLegacy on the fourth cause of action for slander of title. However, the trial court's statement of decision did not include any factual findings in support of the court's ruling on the cause of action for slander of title, and AquaLegacy did not bring the omission to the trial court's attention.

Accordingly, we will infer that the trial court made implied factual findings favorable to defendant Canrow with respect to the cause of action for slander of title, and review those implied findings for substantial evidence. (See *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.) We also will " 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.]" (*Manson*, *supra*, 188 Cal.App.4th at p. 1264.)

Considering the evidence in the light most favorable to Canrow and Medallion Servicing, we find that substantial evidence supports the trial court's implied finding that AquaLegacy did not overcome the qualified privilege that applies to Canrow's trustee's deed by a showing of actual malice. It was undisputed that AquaLegacy was the successful bidder on the foreclosure sale held under the second of trust, and took title subject to the Geneva Deed of Trust that was in default. Thus, AquaLegacy was at risk of losing its ownership interest in the property by a foreclosure sale on the Geneva Deed of Trust from the outset.

31

Further, despite the parties' lengthy negotiations, by the time of the foreclosure sale AquaLegacy had not cured the default or obtained other financing to prevent the foreclosure sale under the Geneva Deed of Trust. The trial court could reasonably find that Canrow's conduct of the foreclosure sale, and its recording of the trustee's deed, did not rise to the level of actual malice because Canrow's conduct was not motivated by hatred or ill will towards AquaLegacy. (See *Kachlon, supra,* 168 Cal.App.4th at p. 336; *Schep*, *supra*, 12 Cal.App.5th at p. 1337.) And, significantly, we have determined that Canrow was not required to give statutory notice of the foreclosure sale to AquaLegacy under section 2924b, subdivision (b)(2) since AquaLegacy was not the trustor.

For these reasons, we conclude that the trial court did not err in finding in favor of Canrow and Medallion Servicing and against AquaLegacy on the cause of action for slander of title. Having reached this conclusion, we decline AquaLegacy's request that we remand the matter for an award of punitive damages.

### D. H049368, *AquaLegacy v. Canrow*

#### 1. Background

The judgment provides that "any party may move for attorney's fees pursuant to Civil Code section 1717." After judgment was entered, AquaLegacy filed a motion for an award of attorney fees.

AquaLegacy contended that it was the prevailing party entitled to an award of contractual attorney fees pursuant to the attorney fees provision in the Geneva Deed of Trust, which provides: "If either party institutes any suit or action to enforce the terms of this Deed of Trust, the prevailing party shall be entitled to recover such sum as the court may adjudge reasonable as attorney's fees and other costs and expenses in such suit or action, including any appeal." AquaLegacy sought attorney fees of at least $1,772,753.35, which it asserted was a reasonable amount in light of the lengthy and complex litigation.

32

Canrow opposed the motion for attorney fees, arguing that AquaLegacy was not the prevailing party and was not entitled to contractual attorney fees under the attorney fees provision in the Geneva Deed of Trust. According to Canrow, AquaLegacy was not the prevailing party because the trial court ruled against it on the fifth cause of action for fraud in the inducement and therefore AquaLegacy did not succeed in invalidating the Geneva Deed of Trust. Canrow also argued that the attorney fees provision in the Geneva Deed of Trust expressly applies only to a party to the Geneva Deed of Trust, which AquaLegacy was not. Alternatively, Canrow argued that the amount of attorney fees claimed by AquaLegacy was unreasonable due to AquaLegacy's lack of success.

The trial court's August 12, 2021 order granted AquaLegacy's motion for an award of attorney fees with a large reduction of the amount requested by AquaLegacy. The order states: "Because AquaLegacy Development LLC prevailed and expended a reasonable amount of time, at reasonable hourly rates, the Court hereby orders that [Canrow] shall pay [AquaLegacy] $1,189,746 in attorneys' fees." The court's order strikes out the words "in full" from the phrase "[AquaLegacy] prevailed in full" in the order proposed by AquaLegacy.

## 2. The Parties' Contentions

On appeal, Canrow argues that AquaLegacy was not the prevailing party for purposes of an award of contractual attorney fees under section 1717 because the Geneva Deed of Trust was not invalidated by the trial court and continues to encumber the property. Canrow also argues that AquaLegacy lacks standing to claim contractual attorney fees under the Geneva Deed of Trust's attorney fees provision since AquaLegacy is not a party to the Geneva Deed of Trust. As to the amount of the attorney fees award, Canrow generally contends that the amount is unreasonable due to AquaLegacy's lack of success in prevailing on any claims, other than its short-term success in setting aside the foreclosure sale without any certainty that another foreclosure sale will not take place.

33

AquaLegacy responds that the trial court correctly determined that it was the prevailing party because judgment was entered in its favor and against Canrow on the "core causes of action" for quiet title and declaratory relief to set aside wrongful foreclosure. AquaLegacy further asserts that causes of action for quiet title, declaratory relief (rights and obligations under the Geneva Deed of Trust), and declaratory relief (set aside wrongful foreclosure) are considered actions on a contract for purposes of an award of contractual attorney fees under section 1717. Additionally, AquaLegacy argues that it has standing to enforce the attorney fees provision in the Geneva Deed of Trust as a subsequent purchaser of the property who resisted foreclosure under the Geneva Deed of Trust.

### 3. Analysis

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citation.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' [Citations.]" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

Under the "American rule," each party to a lawsuit ordinarily pays its own attorney fees. (*Mountain Air*, *supra*, 3 Cal.5th at p. 751.) Code of Civil Procedure section 1021 allows parties to alter this rule by contract: " 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .' " Thus, " ' "[p]arties may validly agree that the prevailing party will be awarded attorney

fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' [Citation.]" (*Mountain Air*, at p. 751; Code Civ. Proc., § 1021.)

Where the litigation sounds in contract, section 1717 governs the application of Code of Civil Procedure section 1021. (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.) Section 1717, subdivision (a) provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Even assuming that that AquaLegacy's causes of action for quiet title, declaratory relief, and declaratory relief to set aside wrongful foreclosure in the second amended complaint are actions on a contract for purposes of an award of contractual attorney fees under section 1717, we determine that the order awarding attorney fees to AquaLegacy must be reversed because AquaLegacy can no longer be considered the prevailing party.

Section 1717, subdivision (b)(1) defines the prevailing party on the contract as "the party who recovered a greater relief in the action on the contract." As the result of our conclusion that the trial court erred in ruling that Canrow's foreclosure was wrongful, and our disposition reversing the judgments in H049160, *Canrow v. AquaLegacy* and H048978, *Ruby Falls v. AquaLegacy*, AquaLegacy has not obtained any relief on any of its contract claims. We will therefore reverse the trial court's order awarding attorney fees in the amount of $1,189,746 to AquaLegacy. In so ruling, we express no opinion as to the merits of any motion for attorney fees that may be brought by the other parties.

## IV. DISPOSITION

In H049160, *AquaLegacy v. Canrow*, the March 21, 2021 judgment is reversed and the matter is remanded to the trial court for the limited purpose of allowing Canrow, upon appropriate motion or other appropriate procedure, to obtain an order for

35

reformation of the trustee's deed recorded November 19, 2014, to correct the error identifying Medallion Silver, LLC as the trustee.

In H048978, *Ruby Falls v. AquaLegacy*, the March 21, 2021 judgment is reversed.

In H049062, *AquaLegacy v. Canrow*, the March 21, 2021 judgment is affirmed.

In H049368, *AquaLegacy v. Canrow*, the August 12, 2021 order awarding attorney fees to AquaLegacy is reversed.

_____
Greenwood, P. J.

WE CONCUR:

_____
Grover, J.

_____
Lie, J.

H048978, H049062, H049160, H049368
AquaLegacy Development LLC v. 2012 Canrow Owner, LLC et al.; Ruby Falls Fund, LLC v. AquaLegacy Development LLC